## JOHN FAULKNER *v.* UNITED TECHNOLOGIES CORPORATION, SIKORSKY AIRCRAFT DIVISION ET AL.
### (15475)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued February 18—officially released April 22, 1997

*Richard W. Gifford,* for the appellant (plaintiff).

*Felix J. Springer,* with whom, on the brief, was *Michael K. Murray,* for the appellee (named defendant).

### Opinion

CALLAHAN, C. J. The plaintiff, John Faulkner, appeals[1] from the judgment of the trial court, *Freed, J.,* rendered in favor of the named defendant, United Technologies Corporation, Sikorsky Aircraft Division,[2] after the court, *Corradino, J.,* struck the first count of the plaintiff's substitute complaint. In that count, the plaintiff alleged that the defendant breached the implied covenant of good faith and fair dealing in their employer-employee relationship by discharging him for refusing to participate in a scheme to defraud the United

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] References to the defendant in this opinion are to the named defendant, United Technologies Corporation, Sikorsky Aircraft Division. The plaintiff's substitute complaint also contained two counts of slander, one against the Purdy Corporation, and the other against Robert Schmedlin, an employee of the Purdy Corporation. On June 16, 1995, the trial court rendered a judgment of dismissal for failure to prosecute on these two counts.

States government. The plaintiff claims that his discharge for refusing to participate in the scheme violated public policy against government contract fraud as expressed in the Major Frauds Act. 18 U.S.C. § 1031. He argues that the trial court improperly struck the first count of his substitute complaint on the ground that it failed to allege a connection between the public policy expressed in the federal statute and the public policy of the state of Connecticut. We reverse the judgment of the trial court and remand the case for further proceedings.

The first count of the plaintiff's substitute complaint alleged the following relevant facts. The plaintiff worked for the defendant as a supplier quality assurance representative from October 2, 1978, until April 29, 1991, when he was discharged by the defendant. The plaintiff's job involved inspecting helicopter parts provided by various suppliers to ensure that the parts met with the defendant's engineering specifications. As part of his job, he was required to inspect parts supplied by subcontractors that were to be used in constructing United States Army Blackhawk helicopters that the defendant was producing pursuant to contracts with the federal government. On numerous occasions, the plaintiff rejected substandard and defective parts provided by suppliers despite pressure from the suppliers and from his superiors to accept the parts. The plaintiff reported the existence of the defective parts to his superiors, who did nothing constructive in response, but instead warned the plaintiff that he might be disciplined in the future for rejecting parts he deemed defective. Thereafter, the allegedly defective parts were used in the construction of various Blackhawk helicopters.

On April 29, 1991, the defendant discharged the plaintiff on the ground that he had engaged in misconduct. In his complaint, the plaintiff alleged that the defendant actually discharged him because he refused to accept

the substandard and defective helicopter parts supplied by the defendant's subcontractors on the Blackhawk helicopter project. He alleged further that the defendant discharged him because he refused to participate in allowing the use of the defective parts in producing helicopters under the government contract. He claimed that the defendant's action constituted a breach of the covenant of good faith and fair dealing existing between the parties because the discharge violated public policy against government contract fraud as expressed in the Major Frauds Act. 18 U.S.C. § 1031 (a).[3]

The trial court construed the first count of the plaintiff's substitute complaint as alleging a wrongful discharge claim pursuant to the public policy limitation on the at-will employment doctrine, as enunciated in *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980), and its progeny. The court determined that, when a plaintiff brings such a claim charging a violation of public policy as expressed in a federal

[3] Title 18, § 1031, of the United States Code provides in relevant part: "Major fraud against the United States. (a) Whoever knowingly executes, or attempts to execute, any scheme or artifice with the intent—

"(1) to defraud the United States; or

"(2) to obtain money or property by means of false or fraudulent pretenses, representations, or promises, in any procurement of property or services as a prime contractor with the United States or as a subcontractor or supplier on a contract in which there is a prime contract with the United States, if the value of the contract, subcontract, or any constituent part thereof, for such property or services is $1,000,000 or more shall, subject to the applicability of subsection (c) of this section, be fined not more than $1,000,000, or imprisoned not more than 10 years, or both.

"(b) The fine imposed for an offense under this section may exceed the maximum otherwise provided by law, if such fine does not exceed $5,000,000 and—

"(1) the gross loss to the Government or the gross gain to a defendant is $500,000 or greater; or

"(2) the offense involves a conscious or reckless risk of serious personal injury.

"(c) The maximum fine imposed upon a defendant for a prosecution including a prosecution with multiple counts under this section shall not exceed $10,000,000 . . . ."

statute, the plaintiff must allege in his complaint that that violation of federal public policy also interfered with an important state interest. The court stated: "[T]here must be a substantial connection between the federal law that is violated and the state's own public policies. The federal law must protect an interest that has a substantial impact on state concerns." Because the plaintiff had failed to include in his complaint an allegation that his discharge implicated state public policy concerns, the trial court granted the defendant's motion to strike.

" 'The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff.' . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted.) *Waters* v. *Autuori*, 236 Conn. 820, 825–26, 676 A.2d 357 (1996). We conclude that the allegations of the plaintiff's substitute complaint, if proved, would constitute a viable cause of action.

In *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 480, in an effort to balance the competing interests of employers and employees, we recognized a public policy limitation on the traditional employment at-will doctrine.[4] *Antinerella* v. *Rioux*, 229 Conn. 479, 492, 642 A.2d 699 (1994). In *Sheets*, we sanctioned a common law cause of action for wrongful discharge in situations

---

[4] A great majority of the states have adopted a public policy limitation on the at-will employment doctrine in one form or another. See *Martin Marietta Corp.* v. *Lorenz*, 823 P.2d 100, 105–106 and nn. 2 and 3 (Colo. 1992) (collecting cases); see also C. Sabey, "Scalpels and Meat Cleavers: Carving a Public Policy Limitation to the At-Will Employment Doctrine," 1993 Utah L. Rev. 597, 602 n.41 (1993) (collecting cases).

in which the reason for the discharge involved "impropriety . . . derived from some important violation of public policy." *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 475; see *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986); *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 572, 479 A.2d 781 (1984). In *Morris* v. *Hartford Courant Co.*, supra, 680, we recognized the "inherent vagueness of the concept of public policy" and the difficulty encountered when attempting to define precisely the contours of the public policy exception. In evaluating claims, "[w]e look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." (Internal quotation marks omitted.) *Antinerella* v. *Rioux*, supra, 492, quoting *Morris* v. *Hartford Courant Co.*, supra, 680.

The plaintiff, in his substitute complaint, alleged that the defendant discharged him in violation of the public policy against government contract fraud expressed in the Major Frauds Act. 18 U.S.C. § 1031.[5] The Major Frauds Act "criminalizes the knowing execution or attempted execution of a scheme or artifice in order to defraud the [United States]." *United States* v. *Frequency Electronics*, 862 F. Sup. 834, 838 (E.D.N.Y. 1994). The act "targets schemes to defraud the United States in connection with procurement contracts executed by (1) prime contractors with the United States, or (2) subcontractors or suppliers on contracts in which there is a prime contract with the United States," if the value of the contract upon which the fraud is based is $1,000,000 or more. *United States* v. *Nadi*, 996 F.2d 548, 551–52 (2d Cir. 1993). The act provides for the imposition of fines up to a maximum of $10,000,000 and for imprisonment up to a maximum of ten years.

---

[5] See footnote 3.

See footnote 3. Congress enacted the Major Frauds Act "to curtail the ubiquitous and rampant fraud in the defense procurement area, 'born of greed in the private sector and inefficiency and acquiescence by the [f]ederal [g]overnment.'" *United States* v. *Frequency Electronics*, supra, 838, quoting Pub. L. No. 101-123, 1989 U.S.C.C.A.N. (103 Stat. 759) 593. The Joint Committee on the Judiciary asserted that procurement fraud was the most costly type of fraud being perpetrated against the federal government. S. Rep. No. 100-503, 2d Sess., 1–2 (1988); H.R. Rep. No. 100-610, 2d Sess., 3–4 (1988). The committee also noted the evils associated with the practice of "product substitution"—in which contractors provide defective products to the federal government—asserting that defense contractors that engage in "product substitution" endanger the lives of American soldiers and threaten national security. S. Rep. No. 100-503, supra, 2; see also H.R. Rep. No. 100-610, supra, 4.

Construing the plaintiff's substitute complaint in the manner most favorable to the plaintiff; *Waters* v. *Autuori*, supra, 236 Conn. 825–26; we read the complaint as alleging that the defendant was involved in a scheme to defraud the federal government by providing the government with Blackhawk helicopters that were constructed using substandard and defective parts. The complaint alleged that the defendant was producing the helicopters under a government contract,[6] and that the

---

[6] Although the complaint does not allege that the value of the contract was $1,000,000 or more, that fact is necessarily implied by the averment in the complaint that the plaintiff's discharge violated the public policy against government contract fraud as enunciated in 18 U.S.C. § 1031 (a), since that provision applies only in situations in which the value of the contract is $1,000,000 or more. See *Ferryman* v. *Groton*, 212 Conn. 138, 146, 561 A.2d 432 (1989) (facts necessarily implied from averments in complaint need not be expressly alleged); *Wachtel* v. *Rosol*, 159 Conn. 496, 500–501, 271 A.2d 84 (1970) (motion to strike "admits all facts well pleaded, including facts necessarily implied from the other averments"); see also *Wexler Construction Co.* v. *Housing Authority*, 144 Conn. 187, 193, 128 A.2d 540 (1956).

defendant knew that it was using defective parts in the construction of the helicopters. As alleged in the complaint, the defendant's actions appear to constitute precisely the type of conduct that Congress intended to deter and punish by enacting the Major Frauds Act. In addition, the complaint alleged that the defendant discharged the plaintiff because he refused to approve the use of the defective parts. In sum, the complaint alleged that the defendant discharged the plaintiff because he refused to participate in violating 18 U.S.C. § 1031.

In *Sheets*, we stated that "an employee should not be put to an election whether to risk criminal sanction or to jeopardize his continued employment." *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 480. This appeal requires us to determine whether that proposition applies in a situation in which the source of the criminal sanction is federal, rather than state, law. In *Sheets*, the plaintiff alleged he had been discharged for reporting to his superiors repeated violations by his employer of the Connecticut Uniform Food, Drug and Cosmetic Act. Id., 478. We noted that the plaintiff's position as quality control director and operations manager exposed him to the possibility of criminal prosecution under the act. Id. In allowing the plaintiff's wrongful discharge claim to proceed, we stated: "We need not decide whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy. Certainly when there is a relevant state statute we should not ignore the statement of public policy that it represents." Id., 480. We did not, however, preclude the use of a federal statute to demonstrate that a discharge violated public policy. We perceive no difference between a situation in which an employee is forced to engage in conduct that may expose him to federal criminal sanctions and a situation in which an employee is forced to engage in conduct

that may expose him to state criminal sanctions. The effect on the employee of being forced to choose between violating the law or facing discharge by his employer is the same regardless of which sovereign criminalizes the conduct. The plaintiff in the present case, like the plaintiff in *Sheets*, held a position requiring him to ensure the quality of the defendant employer's products. If he had followed his superiors' orders, and had approved the use of helicopter parts that he knew to be substandard and defective, he might have exposed himself to potential criminal sanction pursuant to 18 U.S.C. § 1031. We conclude, therefore, that the plaintiff's substitute complaint, in which he alleged that his employer discharged him because he refused to violate a federal criminal statute, and specifically cited the statute, adequately stated a cause of action for wrongful discharge pursuant to *Sheets* and its progeny.

The defendant argues that a wrongful discharge claim pursuant to the public policy limitation on the at-will employment doctrine cannot be predicated solely on a violation of federal law. The defendant cites the following cases in support of this proposition: *McKenzie* v. *Renberg's, Inc.*, 94 F.3d 1478, 1487–88 (10th Cir. 1996) (interpreting Oklahoma law to require plaintiffs claiming wrongful discharge to cite violations of Oklahoma statutes, constitutional provisions, or judicial decisions); *Hicks* v. *Resolution Trust Corp.*, 970 F.2d 378, 380–81 (7th Cir. 1992) (interpreting Illinois law to require plaintiffs claiming wrongful discharge in violation of public policy expressed in federal statute to articulate clearly mandated state public policy); *Olguin* v. *Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1475 (9th Cir. 1984) (interpreting Arizona law, in dicta, to require plaintiffs alleging retaliatory discharge to cite specific Arizona statutes or policies); *Pratt* v. *Caterpillar Tractor Co.*, 149 Ill. App. 3d 588, 591, 500 N.E.2d 1001, cert. denied, 114 Ill. 2d 556, 506 N.E.2d 959 (1987)

(concluding that plaintiffs claiming retaliatory discharge pursuant to Illinois law must allege state public policy violation). The defendant contends, and the trial court agreed, that even if *Sheets* were to allow a plaintiff to use a federal statute as the predicate for a wrongful discharge claim, it nonetheless would require a plaintiff to allege in his complaint some connection between the federal statute and the policy of the state in order properly to state a cause of action. In addition, the defendant argues that a plaintiff relying on the statement in *Sheets* that employees should not be forced to choose between violating the law and losing their jobs must specifically allege this reliance in his or her complaint. The defendant contends that, in the absence of such allegations, employers will not have been given proper notice of the public policy upon which the plaintiff relies, the public policy limitation on the at-will employment doctrine will be improperly broadened, and the balance between the interests of employer and employee will be impermissibly tipped in favor of the employee. We disagree.

First, we do not agree with the defendant that *Sheets* requires a violation of *state* public policy in order for a plaintiff to state a cause of action. Rather, *Sheets* and its progeny refer generally to violations of public policy as expressed in explicit statutory or constitutional provisions, or judicial decisions. See *Antinerella* v. *Rioux*, supra, 229 Conn. 492. In situations such as the present case, in which the plaintiff alleged that his employer discharged him because he refused to violate a federal criminal statute, and specifically cited the federal statute in his complaint, we do not find it necessary for the plaintiff also to allege an explicit connection between the federal statute and the policy of the state. We find support for our conclusion in the decisions of the courts of many other jurisdictions that have determined that claims brought pursuant to the public policy

limitation on the at-will employment doctrine can be predicated on the violation of public policy expressed in a federal statute.[7] See *Kilpatrick* v. *Delaware County Society*, 632 F. Sup. 542, 545–46 (E.D. Pa. 1986) (plaintiff who alleged employer discharged him for complaining to state agency about employer's violations of Occupational Safety and Health Act, 29 U.S.C. § 651 et seq., stated cause of action under Pennsylvania law); *Adler* v. *American Standard Corp.*, 538 F. Sup. 572, 577–79 (D. Md. 1982) (plaintiff who alleged employer discharged him for refusing to violate various federal statutes stated cause of action under Maryland law); *Tameny* v. *Atlantic Richfield Co.*, 27 Cal. 3d 167, 170, 179, 610 P.2d 1330, 164 Cal. Rptr. 839 (1980) (plaintiff who alleged employer discharged him for refusing to violate Sherman Antitrust Act, 15 U.S.C. § 1 et seq., stated cause of action); *Martin Marietta Corp.* v. *Lorenz*, 823 P.2d 100, 110–11 (Colo. 1992) (plaintiff established prima facie case where evidence demonstrated that employer discharged him for refusing to commit fraud against federal government in violation of 18 U.S.C. § 1001 et seq.); *Wheeler* v. *Caterpillar Tractor Co.*, 108 Ill. 2d 502, 506, 510–11, 485 N.E.2d 372 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1641, 90 L. Ed. 2d 187 (1986) (plaintiff who alleged employer discharged him for refusing to work under conditions that violated Atomic Energy Act of 1954, 42 U.S.C.

---

[7] We find the authorities cited by the defendant in support of its argument unpersuasive. We note that the factual circumstances of *Hicks* v. *Resolution Trust Corp.*, supra, 970 F.2d 378, and *Olguin* v. *Inspiration Consolidated Copper Co.*, supra, 740 F.2d 1468, are distinguishable from the factual circumstances of the present case. In *Hicks*, the federal statute that the plaintiff claimed his employer had violated did not provide for criminal sanctions. The plaintiff, therefore, was never subject to the possibility of criminal prosecution. *Hicks* v. *Resolution Trust Corp.*, supra, 382. In *Olguin*, the court determined that the plaintiff, in reality, had pleaded the violation of a collective bargaining agreement. The court stated: "We need not consider here whether tort law protects employees from wrongful discharge in Arizona." *Olguin* v. *Inspiration Consolidated Copper Co.*, supra, 1474 n.7.

§ 2011 et seq., stated cause of action); *Howard* v. *Zack Co.*, 264 Ill. App. 3d 1012, 1023–24, 637 N.E.2d 1183, cert. denied, 158 Ill. 2d 551, 645 N.E.2d 1358 (1994) (plaintiff who alleged employer discharged him for reporting violations of record keeping requirements of federal regulations stated cause of action); *Russ* v. *Pension Consultants Co.*, 182 Ill. App. 3d 769, 772, 776–77, 538 N.E.2d 693 (1989) (plaintiff who alleged employer discharged him for refusing to violate provisions of Internal Revenue Code stated cause of action); *Johnson* v. *World Color Press, Inc.*, 147 Ill. App. 3d 746, 748–49, 498 N.E.2d 575, cert. denied, 113 Ill. 2d 575, 505 N.E.2d 353 (1986) (public policy, for purposes of state common law retaliatory discharge claims, can be found in federal laws that are national in scope); *Petersimes* v. *Crane Co.*, 835 S.W.2d 514, 517 (Mo. App. 1992) (plaintiff who alleged employer discharged him for refusing to commit fraud on federal government in violation of 18 U.S.C. § 1001 et seq. stated cause of action); *Boyle* v. *Vista Eyewear, Inc.*, 700 S.W.2d 859, 876–77 (Mo. App. 1985) (plaintiff who alleged employer discharged her for refusing to violate federal regulations stated cause of action); *Peterson* v. *Browning*, 832 P.2d 1280, 1285 (Utah 1992) (Utah's public policy exception encompasses violations of federal law and laws of other states, as well as violations of Utah law, if violations contravene clear and substantial public policy of Utah); *Thompson* v. *St. Regis Paper Co.*, 102 Wash. 2d 219, 234, 685 P.2d 1081 (1984) (plaintiff who alleged employer discharged him because he instituted certain accounting procedures in attempt to bring employer into compliance with Foreign Corrupt Practices Act of 1977 and Securities Exchange Act of 1934 stated cause of action); see also *Novosel* v. *Nationwide Ins. Co.*, 721 F.2d 894, 898–99 (3d Cir. 1983) (plaintiff who claimed discharge violated public policy expressed in constitutions of United States and Pennsylvania stated cause of action for wrongful discharge under Pennsylvania law).

Moreover, it is not necessary that the plaintiff specifically allege that his discharge violated the public policy, expressed in *Sheets*, against employers forcing employees to commit criminal acts. The question of whether a challenged discharge violates public policy, state or federal, by forcing the commission of criminal acts, or otherwise, is a question of law to be decided by the court, not a question of fact that a plaintiff must allege in his complaint. Practice Book § 131[8] requires a plaintiff to plead only the facts constituting his or her cause of action. A motion to strike "admits all *facts* well pleaded; it does not admit *legal conclusions or the truth or accuracy of opinions* stated in the pleadings." (Emphasis in original.) *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108, 491 A.2d 368 (1985). The allegations of a complaint subject to a motion to strike "are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support . . . a cause of action, the motion to strike must fail." Id., 108–109. We simply do not agree with the defendant that *Sheets* imposed a pleading requirement on plaintiffs alleging wrongful discharge claims that such plaintiffs must plead *conclusions of law in their complaints in addition to pleading the facts that constitute their causes of action.*

Finally, we do not believe that our decision today impermissibly tips the balance between the interests of employer and employee, or creates any more uncertainty for employers than that generated by *Sheets*. The very nature of our decision in *Sheets* requires a case-

[8] Practice Book § 131 provides: "—Contents of Complaint

"The first pleading on the part of the plaintiff shall be known as the complaint. It shall contain a concise statement of the facts constituting the cause of action and, on a separate page of the complaint, a demand for relief which shall be a statement of the remedy or remedies sought. When money damages are sought in the demand for relief, the demand for relief shall include the information required by Gen. Stat., § 52-91."

by-case analysis of employee claims, which necessarily creates a certain degree of uncertainty in the law. We fail to see, however, how imposing the pleading requirements urged by the defendant would in any way put employers in a better position to respond to or anticipate potential employee claims. " 'The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried . . . .' " *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 6, 327 A.2d 583 (1973). It is clear from the record that the plaintiff's substitute complaint sufficiently alerted the defendant, as well as the trial court, that the plaintiff's claim was a claim for wrongful discharge pursuant to the public policy limitation set forth in *Sheets*.

"We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation. We are, however, equally mindful that the myriad of employees without the bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers." *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 477. Our decision today falls squarely within the analytical framework enunciated in *Sheets* and its progeny.

The judgment with respect to the first count is reversed and the case is remanded with direction to deny the defendant's motion to strike, and for further proceedings according to law.

In this opinion the other justices concurred.