[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (DOCKET ENTRY NO. 104)
The amended complaint alleges the following facts. In July of 1997, the plaintiff, B. Todd Sachtjen, was hired by the defendant, Enterprise Mortgage Acceptance Company, LLC, (EMAC). The defendants Kenneth A. Saverin (Saverin) and Jeffrey J. Knyal (Knyal) are the president and executive vice president of EMAC respectively, each owning roughly 10% of EMAC individually. EMAC provides secured financing to businesses. The plaintiff formerly served as a vice president of underwriting. At all times, the plaintiff was an at-will employee. On March 16, 1999, the defendant terminated the plaintiff's employment. On March 18, 1999, the defendant EMAC filed suit against the plaintiff Sachtjen and other employees alleging the solicitation of EMAC employees and utilizing EMAC business information to formulate a business plan and create an entity that would compete against EMAC. On August 5, 1999 the plaintiff filed an amended complaint, in the present case, claiming, inter alia, that he had no knowledge of any business plan and could not produce one when the CT Page 178 defendant demanded its production and that consequently, EMAC fired him when he could not generate the alleged plan.
The plaintiff alleges wrongful discharge along with other causes of action for declaratory judgment concerning his equity interest and compensation owed because of past services, breach of contract, defamation, tortious interference with business expectations, intentional interference with contractual relations, intentional infliction of emotional distress, negligent infliction of emotional distress and violations of the Connecticut Unfair Trade Practices Act, General Statutes §42-110a et seq. In particular, the plaintiff alleges that he had an agreement with the defendants for incentive compensation bonuses, marketing commissions of 1/4 of 1% of the principal balance of loan transactions generated by the plaintiff, and a 1/8 of 1% equity interest in EMAC which the plaintiff alleges EMAC was obligated to hold in escrow until January 1, 2001.
On August 19, 1999, the defendants filed a motion to strike various counts of the plaintiff's amended complaint.
The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. In considering a motion to strike, the court must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. If facts provable in the complaint would support a cause of action, the motion to strike must be denied. Peter-Michael, Inc. v. SeaShell Associates, 244 Conn. 269, 270-71, 709 A.2d 558 (1998).
 Wrongful Discharge
The defendants move to strike the first count of the plaintiff's amended complaint as applied to all of the defendants named. The defendants argue that the plaintiff has not sufficiently alleged a public policy violation to state a cause of action for wrongful discharge. The plaintiff alleges wrongful discharge in the first count of his complaint against defendants EMAC and Knyal. The plaintiff claims he was discharged based on his involvement in a business plan to compete against EMAC and that he was unaware of such plan. As a result, the plaintiff alleges that the defendants breached the implied covenant of good faith and fair dealing in the oral contract of employment by falsely accusing him of being involved in the aforementioned CT Page 179 business plan. The plaintiff alleges that this violates public policies of extortion, impossibility, and depriving the plaintiff of certain compensation and benefits attributable to his past services for EMAC.
In Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474,427 A.2d 385 (1980), the Supreme Court "[recognized] the general proposition that contracts of permanent employment, or for an indefinite term, are terminable at will." Id., 474. However the Court also acknowledged an exception to the at will rule whereby the employer is responsible in damages if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy. Id., 475. In evaluating public policy claims, the court must look to see whether the plaintiff has alleged that his discharge violated any explicit statutory or constitutional provision or whether he alleged that his dismissal contravened any judicially conceived notion of public policy. Parsons v.United Technologies Corp., 243 Conn. 66, 77, 700 A.2d 655 (1997); see also Faulkner v. United Technologies Corp., 240 Conn. 576,580-81, 693 A.2d 293 (1997). Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception. Morris v. HartfordCourant Co., 200 Conn. 676, 680, 513 A.2d 66 (1986). The plaintiff's claim is based on a false accusation on the part of the defendant employer. The defendant argues that the plaintiff has failed to cite a particular provision of any statute or constitution nor has he alleged a judicially recognized public policy. The plaintiff responds that he sufficiently alleges non-statutory public policies that support the wrongful discharge claim.
The Connecticut Supreme Court has stated: "We need not decide whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy. Certainly when there is a relevant state statute we should not ignore the statement of public policy that it represents." Sheets v. Teddy's Frosted Foods, Inc., supra,179 Conn. 480. That court further observed:
 "The issue then becomes the familiar common-law problem of deciding where and how to draw the line between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not. The courts CT Page 180 should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation. We are, however, equally mindful that the myriad of employees without the bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers." Id., 477.
Then several years later in Magnan v. Anaconda Industries,Inc., 193 Conn. 558, 479 A.2d 781 (1984), the Supreme Court stated that: "Although we do not disapprove of the application of the good faith principle to contracts of employment . . ., we limit ourselves to the conclusion that a breach of such an implied covenant cannot be predicated simply upon the absence ofgood cause for a discharge." (Emphasis added.) Id., 570-71.
 "Where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right. Like other contract provisions, which are unenforceable when violative of public policy, the right to discharge at will is subject to the same restriction. We see no reason presently, therefore, to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety . . . derived from some important violation of public policy." (Internal quotation marks omitted.) Id., 572.
And, with regard to the claim in the present case, the court declared in Morris v. Hartford Courant Co., supra, 200 Conn. 680: "A false but negligently made accusation of criminal conduct as a basis for dismissal is not a `demonstrably improper reason for dismissal' (emphasis in original) and is not `derived from some important violation of public policy.'" (Citation omitted.)
Additionally, this court has decisively refused to acknowledge false accusations, by an employer when terminating an at-will employee, to constitute a violation of public policy for purposes of wrongful discharge. In Fiorella v. Galena Associates, LLC.,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 343514 (November 21, 1997, Melville, J.), the court pronounced:
 "The plaintiff here argues that there is a judicially CT Page 181 recognized public policy against the making of false accusations of criminal activity without prior investigation but cites to no authority for its contention that the `established public policy' which he has alleged is a judicially recognized public policy in the context of employer-employee relations. Even construing the facts most favorable to the plaintiff and assuming that the defendants did knowingly make false accusations, such actions are not sufficient to violate an important public policy. While certain actions may abrogate public policy, not every act in derogation of a general statute, nor all conduct contrary to the common law, rises to the level of a violation of an important public policy. . . . Furthermore, the underlying rationale of Sheets
is to protect employees from being put in the position of choosing between employment and criminal acts. . . . It should be noted that the court in Faulkner uses the phrase `violates public policy . . . by forcing the commission of criminal acts, or otherwise.' . . . While types of employer misconduct other than coercion of criminal acts might violate established public policy, the central aim of the public policy exception is to provide `a modicum of judicial protection [to employees] when their conduct as good citizens is punished by their employers." (Emphasis added.)
The "otherwise" refers to employer misconduct that goes to employee's behavior as citizens, such as fulfilling jury duty but does not encompass reckless accusations of criminal conduct. Even though the public policy exception might be broad enough to include reckless accusations of criminal conduct, this court should not make that determination in the face of the supreme court's emphasis on protecting employees from being forced to choose between termination and illegal activities. Until the legislature or the supreme court finds otherwise, the Superior Court should not undermine the well established rule that an employee at will is terminable at will." See also Cuomo v. BlueCross Blue Shield of Connecticut, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 374864 (June 24, 1996, Fracasse, J.) (16 Conn. L. Rptr. 550) (There is no cause of action in Connecticut for wrongful termination in violation of an important public policy based on allegations that the employer falsely accused the plaintiff of criminal misconduct, regardless of whether the false accusation was made negligently or intentionally); Reyes v. Ames Department Stores, Inc., Superior Court, judicial district of Waterbury, Docket No. 109112 (January 18, 1994, Sylvester, J.) (9 C.S.C.R. 152) (Since accusations of CT Page 182 theft do not rise to the level of a violation of an important public policy, the plaintiff did not sufficiently allege a cause of action for wrongful discharge.); and Rafael v. St. Vincent'sMedical Center, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 287705 (August 26, 1993, Ballen, J.) (The defendant's actions with respect to the discharge, including the making of false accusations of theft and dishonesty, did not rise to the level of a violation of an important public policy).
As alleged, the basis for the plaintiff's wrongful discharge theory in the present case was that he was falsely accused of taking EMAC business plans to convert for his own business purposes. Applying the abovementioned principle, the plaintiff has not alleged a sufficient violation of public policy to sustain his wrongful discharge claim. Clearly, the plaintiff has failed to allege an adequate statutory, constitutional or judicially recognized violation of public policy upon which relief may be granted. See Fiorella v. Galena Associates, LLC.,
supra, Superior Court, Docket No. 343514. Even when construing the facts in the amended complaint to be true and in the light most favorable to the plaintiff, defendant EMAC did not put the plaintiff in the position of having to choose between engaging in criminal activities or being terminated. Placing a plaintiff employee in that predicament is the type of public policy violation that the Supreme Court has chosen to carve out as an exception to the at-will employment rule. See Morris v. HartfordCourant Co., supra, 200 Conn. 680.
Accordingly, since the plaintiff has not alleged a sufficient public policy violation to support his wrongful discharge cause of action, the defendants' motion to strike count one of the plaintiff's amended complaint is hereby GRANTED.
 Declaratory Relief
The defendants Saverin and Knyal argue that the court should strike count six of the plaintiff's complaint because the defendants are not individually obligated to the plaintiff regarding the agreement for equity interest and escrow holding and thus, the plaintiff has not stated a sufficient claim for declaratory relief. To support this argument, the defendants attach to their motion and refer to in their memorandum, a contract agreement between EMAC and the plaintiff. The plaintiff asserts that Connecticut statutory and procedural law allow such a declaratory judgment and that the defendants' motion improperly CT Page 183 utilizes material outside of the pleadings.
General Statutes § 52-29(a) states: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have, the force of a final judgment." Subsection (b) provides: "The judges of the Superior Court may make such orders and rules as they may deem necessary or advisable to carry into effect the provisions of this section." See General Statutes § 52-29(b). Additionally, Practice Book § 17-55(1) and (4) allow the plaintiff to state a sufficient cause of action for declaratory judgment. The relevant portions of that rule state:
 "The judicial authority will not render declaratory judgments upon the complaint of any person: (1) unless the party has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations; . . . (4) until all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." Practice Book § 17-55(1) and (4).
Applied here, the plaintiff has alleged sufficient conditions that are necessary under the Practice Book to seek declaratory judgment. The plaintiff sufficiently states in his complaint that he has an equity interest in EMAC that is to be held for him and that based upon the circumstances of him being discharged, there is a danger of loss or uncertainty as to what will happen to his interest. See Practice Book § 17-55(1). Moreover, the plaintiff sufficiently claims that the defendants Saverin and Knyal each own 10% of EMAC, thus adequately having an interest in the subject matter, since the declaration seeks a percentage of what the individual defendants also partially own. See Practice Book § 17-55(4). The plaintiff has also stated a recognizable claim because the defendants, having been sued, are parties to the action and therefore have notice of their interest in the subject matter-equity in EMAC. See Practice Book §17-55(4).
Furthermore, in deciding a motion to strike, the court is limited "to a consideration of the facts alleged in the complaint. A `speaking' motion to strike (one imparting facts outside the pleadings) will not be granted." Doe v. Marselle,38 Conn. App. 360, 364, 660 A.2d 871 (1995), rev'd on other grounds,236 Conn. 845, 675 A.2d 835 (1996). Where the legal grounds for a CT Page 184 motion to strike are dependent upon underlying facts not alleged in the plaintiff's pleadings, the defendant must await the evidence which may be adduced at trial, and the motion should be denied. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990).
Here, the defendants may not argue their motion to strike by affixing a contract agreement to their motion and making reference to its provisions. The attached agreement is beyond material contained in the plaintiffs complaint. The defendants may not properly utilize materials which `speak' outside the complaint. See Doe v. Marselle, supra, 38 Conn. App. 364. Therefore, since the plaintiff has sufficiently pled a cause of action for a declaratory judgment as aforesaid, the defendants' motion to strike count six of the plaintiff's amended complaint is hereby DENIED.
 Vexatious Litigation
The defendants move to strike counts seven, eight, nine and ten of the plaintiff's amended complaint which allege respectively, tortious interference with business relations, intentional interference with contractual relations, intentional infliction of emotional distress and negligent infliction of emotional distress. The defendants' motion to strike these counts is based on a theory of vexatious litigation, i.e., that the plaintiff is suing in retaliation to the defendants' civil action against the plaintiff. The defendants further maintain that even if the plaintiff has alleged some facts that may comprise the preceding causes of action, the plaintiff's claims are still partially based on vexatious litigation and therefore should be stricken. The plaintiff insists it has alleged, by virtue of its complaint, sufficient facts to state a claim, for each count, upon which relief may be granted. Specifically, as a basis for the above counts, the plaintiff's factual allegations include but are not limited to: (1) that the defendant engaged in a campaign of harassment; (2) that the defendant contacted potential and prospective investors the plaintiff had relations with; (3) that the defendant disparaged the plaintiff's reputation with these investors; (4) that the defendant intentionally and maliciously interfered with the plaintiff's ability to obtain financing and; (5) that the plaintiff consequently suffered damages, both pecuniary and emotional.
The defendants have improperly moved to strike these counts. CT Page 185 The defendants argue that mixed vexatious litigation claims along with facts that may constitute the above named causes of action still give rise to a motion to strike. However, the proper way to cure any confusion regarding the nature of what is being pleaded in the complaint is to file a motion to revise, not a motion to strike the entire complaint. If a request to revise had been granted and complied with, the defendants would then be in a position to move to strike any count of the plaintiff's revised complaint pertaining to their respective liabilities for which the plaintiff was unable to allege the necessary prerequisites.Rowe v. Godou, 209 Conn. 273, 279, 550 A.2d 1073 (1988). See also, Practice Book § 10-35; Royce v. Westport,183 Conn. 177, 180, 439 A.2d 298 (1981). Thus, the defendants should have filed a request to revise to differentiate facts alleging vexatious litigation from facts alleging the causes of action named in counts seven, eight, nine, and ten. See Practice Book § 10-35. Accordingly, the defendants' motion to strike counts seven, eight, nine and ten of the plaintiff's amended complaint is hereby DENIED.
Wherefore, for all the reasons set forth above, the court HEREBY GRANTS THE DEFENDANTS' MOTION TO STRIKE COUNT ONE AND DENIES the defendants' motion to strike counts six, seven, eight, nine, and ten of the plaintiff's amended complaint.
MELVILLE, J.