[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#128)
 Facts
The plaintiffs, Patricia Webster, Frank DeiGreco and John Mulcahy, filed the third revised complaint in this action on June 15, 2001. The plaintiffs allege the following facts in all counts of the complaint. Webster, DelGreco and Mulcahy were as general manager, assistant manager and comptroller, respectively, of the Mystic Hilton Hotel (Mystic Hilton). The defendant A. Searle Field was an agent of the defendant Pequot Mystic Hotel, LLC (Pequot). In 1996, after ownership of the Mystic Hilton was transferred to Pequot, Field promised the plaintiffs that if they would continue managing the hotel, they would receive the same rights and benefits that they had received under their employment contracts with the previous owner of the hotel. In 1998, the plaintiffs were asked to assume additional duties including oversight of two hotel and restaurant operations known as the Norwich Inn Spa and Randall's Ordinary, both of which were owned by the Mashantucket Pequot Tribal Nation (tribal nation).
Certain members of the tribal nation's government interfered with the plaintiffs' management of the Norwich Inn Spa, seeking favorable CT Page 335 treatment for members of the tribal nation. Between February and April, 2000, there were problems involving Mary Kilgore, a cafeteria attendant. Kilgore engaged in an abusive pattern of behavior toward her co-workers and would not have remained an employee but for her relationship[1]
with a member of the tribal nation. On April 7, 2000, Kilgore engaged in behavior that threatened the safety of a pregnant co-worker, who made a complaint to the management. Webster and her management team conducted an investigation and determined that Kilgore posed a threat of physical harm to her pregnant co-worker. After obtaining the permission of Larry Fowler, the tribal nation's vice president for human resources, Webster terminated Kilgore's employment.
Subsequent to Kilgore's termination, certain members of the tribal nation, including Nicole Sebastian, who was Kilgore's friend and co-worker, and Richard Sebastian, who was employed by a member of the tribal council, objected to the decision. Fowler instructed Webster to rehire Kilgore. In explaining the reason for ordering the rehiring of Kilgore, Fowler stated: "Politically, this one is going to get rough." When Webster informed Fowler that there was no support among the management for the rehiring of Kilgore, Fowler told Webster that Richard Sebastian was disappointed, that the decision to rehire Kilgore was political, and that it would be in Webster's "best interest" to rehire Kilgore. Because of the threat of adverse consequences, Webster agreed to rehire Kilgore.
Subsequently, the pregnant employee who had been threatened and harassed by Kilgore was nearly struck down in a parking lot by a vehicle driven by Nicole Sebastian and carrying Kilgore as a passenger. Following another investigation, the plaintiffs again concluded that Kilgore's employment should be terminated. When Fowler learned of the plaintiffs' plan to fire Kilgore, he again objected, stating that the issue was "political." Webster met with the tribal nation's chief of staff, who agreed Kilgore should be terminated. Shortly after Kilgore was fired for the second time, Webster received a phone call from Anthony Beltran, the tribal nation's council member in charge of employment. Beltran asked Webster what was going on at the spa and whether Webster was "going off on" Kilgore. Webster attempted to inform Beltran of the threat of danger imposed by Kilgore, after which the conversation ended abruptly.
About two weeks later, the tribal nation launched an investigatory audit of the management of the Mystic Hilton. When the audit failed to discover any information to support any claims of wrongdoing by the plaintiffs, the tribal nation's Inspector General's Office and its agent manufactured a claim that Patricia Webster had misused a personal expense account that was part of the benefits package that Pequot agreed to continue when it purchased the Mystic Hilton. The agent also questioned CT Page 336 Webster's thirty day delay in paying a catering bill. In the course of the audit Webster, her management team, other employees, outside vendors and agents of the Fisher Hotel Group (the previous owner of the Mystic Hilton) provided information proving the falsity of the allegations of malfeasance by Webster.
Following the investigation, Field asked Webster to resign. When Webster refused, Field terminated Webster's employment. Field subsequently asked Mulcahy to sign a false statement, under oath, that Webster was not authorized to use the personal expense account. Mulcahy refused to sign the statement. Subsequently, Field fired both Mulcahy and DelGreco. Field instructed a group of managers to inform at least 500 employees that the plaintiffs and defendants had parted ways as a result of an investigation, but that no criminal charges would be brought, thus falsely implying that there may have been a basis for criminal charges. The defendants knew or should have known that termination of the plaintiffs' employment under such circumstances would effectively destroy the plaintiffs' careers in hotel management.
In count three, the plaintiffs allege that they were discharged in retaliation for the termination of Kilgore and that the defendants knew or should have known that the motivation for firing Kilgore was the safety of the employees of the Norwich Inn Spa. The plaintiffs further allege that their discharge violates Connecticut's public policy, as embodied in General Statutes § 31-49, which requires an employer to provide a reasonably safe work atmosphere for its employees.
In count five, the plaintiffs allege that in the course of terminating the plaintiffs' employment, the defendants engaged in conduct that they knew or should have known had the propensity to cause bodily harm, namely, subjecting the plaintiffs to a terrorizing and intimidating investigatory audit and manufacturing a false claim of financial impropriety, the publication of which was certain to ruin the plaintiffs' careers in hotel management. The plaintiffs further allege that the defendants' actions constitute negligent infliction of emotional distress.
In count six, the plaintiffs allege that the defendants have engaged in outrageous behavior by intentionally and willfully subjecting the plaintiffs to a heavy-handed, intimidating and biased investigation, disseminating false information regarding the plaintiffs' conduct, and suggesting that the plaintiffs had engaged in conduct which could result in criminal charges. The plaintiffs further allege that the defendants' actions constitute intentional infliction of emotional distress.
On June 29, 2001, the defendants filed a motion to strike counts CT Page 337 three, five and six of the third revised complaint on the ground that the facts alleged are legally insufficient to state claims upon which relief can be granted. More specifically, the defendants move to strike count three on the ground that the plaintiffs have failed to allege facts supporting the claim that the motivation for the defendants' discharge of the plaintiffs involved impropriety derived from some important violation of public policy and on the additional ground that the plaintiffs have failed to allege a legally cognizable claim against Field for retaliatory discharge. The defendants move to strike count five on the ground that the plaintiffs fail to allege unreasonable conduct by the defendants during the termination process or at the time of the plaintiffs' discharge from employment. The defendants move to strike count six on the ground that the plaintiffs fail to allege any extreme or outrageous conduct by the defendants. The defendants have filed a memorandum of law in support of their motion. The plaintiffs filed a memorandum of law in opposition on August 20, 2001.
 Discussion
"Whenever any party wishes to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading. . . ." Practice Book § 10-39(a). "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Faulkner v. UnitedTechnologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997).
 Count Three
The defendants argue that count three of the plaintiffs' third revised complaint is legally insufficient to state a claim for wrongful discharge because the plaintiffs have failed to allege that the defendants' reason or motivation for discharging the plaintiffs involved impropriety derived from some important violation of public policy. The essence of the defendants' argument is that the allegations of count three do not constitute a legally sufficient claim of wrongful discharge, because the plaintiffs allege that they were discharged. for protecting not their own rights, but the right of a third party, namely, Kilgore's pregnant co-worker, to a safe work environment. The plaintiffs argue that they have stated a legally sufficient claim for wrongful discharge in violation of the public policy embodied in General Statutes § 31-49. CT Page 338
"In Sheets v. Teddy's Frosted Foods, Inc., [179 Conn. 471, 480,427 A.2d 385 (1980)], in an effort to balance the competing interests of employers and employees, we recognized a public policy limitation on the traditional employment at-will doctrine. . . . In Sheets, we sanctioned a common law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety . . . derived from some important violation of public policy." (Citation omitted; internal quotation marks omitted.) Parsons v. United Technologies Corp.,243 Conn. 66, 76, 700 A.2d 655 (1997).
General Statutes § 31-49 provides in relevant part: "It shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent persons as his colaborers. . . ." In Parsons v. United TechnologiesCorp., supra, 243 Conn. 66, our Supreme Court held that General Statutes §§ 31-49 and 31-370 may provide a public policy basis for a wrongful discharge action: "Both §§ 31-49 and 31-370 reflect a broad legislative concern for the physical welfare and safety of Connecticut employees. . . . [T]he mandate of public policy that these statutes embody gives a Connecticut employee a cause of action for wrongful discharge against an employer transacting business in Connecticut if the employee is discharged for refusing to work under conditions that pose a substantial risk of death, disease or serious physical harm and that are not contemplated within the scope of the employee's duties." Id., 80.
In Parsons, the court held that the plaintiff was wrongfully discharged for refusing to report to work in a war zone. The defendants in the present case argue that the cause of action recognized in Parsons is limited to cases in which the employee has been discharged for attempting to enforce his own right to a safe workplace. The defendants conclude that the present case is distinguishable because the plaintiffs have alleged that they were discharged for taking actions to protect the rights of others to a safe workplace.
The court is not persuaded by the defendants' arguments. AlthoughParsons involved a plaintiff who was discharged for asserting his own right to a safe work environment, it does not follow from this that an employer may, without incurring tort liability, discharge an employee for protecting his subordinates' or co-workers' rights. On the contrary, this court concludes that the strong public policy recognized in Parsons when viewed in conjunction with other Supreme Court decisions, supports the view that such allegations should give rise to an action in tort for wrongful discharge. CT Page 339
In Sheets v. Teddy's Frosted Foods, Inc., supra, 179 Conn. 471, the plaintiff was employed as the defendant corporation's quality control director and operations manager. The plaintiff alleged that he was discharged because he called to his employer's attention violations of the Connecticut Uniform Food, Drug and Cosmetic Act. The plaintiff's position was such that he could have been exposed to criminal prosecution under that act. The court concluded that "an employee should not be put to an election whether to risk criminal sanction or to jeopardize his continued employment." Id., 480. In Faulkner v. United TechnologiesCorp., supra, 240 Conn. 576, our Supreme Court extended the Sheets
rationale to include situations in which an employee is discharged for refusing to participate in a scheme that might have exposed him to criminal sanctions under federal law. The Faulkner court concluded its discussion by reaffirming the principle behind Sheets: "`We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation. We are, however, equally mindful that the myriad of employees without the bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers.' Sheets v. Teddy's FrostedFoods, Inc., supra 179 Conn. 477." Faulkner v. United TechnologiesCorp., supra, 240 Conn. 589.
The plaintiffs in the present case do not argue that failing to fire Kilgore would have exposed them to criminal liability. There can be no doubting, however, that the plaintiffs' failure to take action to eliminate Kilgore's threatening behavior would have violated our state's strong public policy, recognized in Parsons, requiring a safe workplace. The court sees no reason to distinguish between cases such as Sheets andFaulkner, in which plaintiffs were forced to choose between losing their jobs and risking criminal liability, and the present case, in which the plaintiffs allegedly were forced to choose between losing their jobs and violating our state's judicially recognized public policy.
The plaintiffs have alleged in count three that their discharge was motivated by their firing of an individual who posed a serious threat to the physical safety of at least one co-worker and her unborn child. As inSheets and Faulkner, the plaintiffs here should receive a modicum of judicial protection if they can prove that their conduct as good citizens was punished by the defendants.[2] For this reason, the plaintiffs have alleged sufficient facts in count three of the third revised complaint to survive a motion to strike.
The defendants also argue that count three should be stricken as to the defendant Field because there is no allegation that he was the plaintiffs' employer. A motion to strike a count brought against multiple CT Page 340 defendants may not be granted on the ground that the allegations are insufficient as they relate to a single defendant. When a single count of a complaint combines separate causes of action against multiple defendants, "the proper way to cure any confusion in that regard is to file a [request] to revise, not a motion to strike the entire complaint. Practice Book § [10-35 (3)]. If a request to revise had been granted and complied with, the defendants would then have been in a position to move to strike any count of the plaintiff's revised complaint pertaining to their respective liabilities for which the plaintiff was unable to allege the necessary prerequisites." Rowe v. Godou, 209 Conn. 273, 279,550 A.2d 1073 (1988); see also Schoonmaker v. Lawrence Brunoli, Inc.,
Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 472829 (March 17, 1997, Stengel, J.); Bouchette v.Mercedes Benz, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 150339 (February 6, 1997, Ryan, J.). Even if the defendants are correct that count three fails to state a cause of action against Field, the motion to strike cannot be granted because the court has already determined that count three states a legally sufficient cause of action against Pequot. Because facts provable in count three would support a cause of action, the motion to strike must be denied as to that count. See Faulkner v. United Technologies Corp., supra, 240 Conn. 580.
 Counts Five and Six
The defendants next argue that the allegations of count five of the third amended complaint are insufficient to state a claim for negligent infliction of emotional distress, and that the allegations of count six are insufficient to state a claim for intentional infliction of emotional distress. Specifically, with regard to count five, the defendants argue that the plaintiffs have failed to plead any unreasonable conduct during the termination process or at the time of the plaintiffs' discharge. With regard count six, the defendants argue that the plaintiffs have not alleged any extreme or outrageous conduct.
"We first recognized a cause of action for negligent infliction of emotional distress in Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 345, 398 A.2d 1180 (1978). We concluded, however, that in order to state such a claim, the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm. . . . Accordingly, negligent infliction of emotional distress in the employment context arises only where is it based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of CT Page 341 firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citations omitted; internal quotation marks omitted.) Parsons v. United Technologies Corp., supra,243 Conn. 88-89.
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that be extreme and outrageous is initially a question for the court to determine . . . Only where reasonable minds disagree does it become an issue for the jury." (Citations omitted; internal quotation marks omitted.) Appleton v. Boardof Education, 254 Conn. 205, 210, 757 A.2d 1059 (2000).
"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . `Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965). Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted, internal quotation marks omitted.)Appleton v. Board of Education, supra, 254 Conn. 210-11.
The court does not agree, as the defendants' case citations suggest, that the plaintiffs are seeking to recover for infliction of emotional distress based on the mere termination of employment. Regarding the termination process, the plaintiffs have alleged: that the defendants fabricated charges of financial wrongdoing despite possessing proof of the plaintiffs' innocence; that the defendants used the fabricated charges as the basis for terminating at least one of the plaintiffs; that another plaintiff was terminated for refusing to lie under oath; that the defendants informed the other managers that the plaintiffs were terminated as a result of an investigation but the "criminal charges would not be brought and instructed the managers to relate the same information to at least 500 other employees; and that the defendants knew CT Page 342 or should have known that their actions had the propensity to cause bodily harm and would effectively destroy the plaintiffs' careers in hotel management.
The allegations of counts five and six, viewed in the light most favorable to the plaintiffs, are more than adequate to satisfy the requirement of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm. Moreover, the allegations go far beyond merely being insulting, displaying bad manners, or resulting in hurt feelings; the conduct alleged goes beyond all possible bounds of decency. The allegations are thus sufficient to state a claim for both negligent and intentional infliction of emotional distress. The motion to strike must be denied as to both the fifth and sixth counts.
 Conclusion
The plaintiffs, in the third count of the third revised complaint, have pleaded sufficient facts to support a claim of wrongful discharge in violation of public policy. Additionally, the allegations in counts five and six are sufficient to support claims of negligent infliction of emotional distress and intentional infliction of emotional distress, respectively. The motion to strike counts three, five and six of the third revised complaint is therefore denied.
D. Michael Hurley, Judge Trial Referee