[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before this Court is a motion filed by defendant, University of Bridgeport, to strike counts 1, 2, 3, 4, and 6 of the plaintiffs complaint.[1] The plaintiff filed a memorandum in opposition to which Defendant Botwick filed a Reply Memorandum. Counts 1 through 4 state claims for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress. Count 6 states a claim for a violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Statute section 42-110a. For reasons more fully set forth below, this court denies the motion to strike Counts 1-4 and Count 6.
The pertinent facts as alleged are as follows. The plaintiff claims that she was a student in the College of Naturopathic Medicine at the University of Bridgeport. She claims that while a student she was subjected to repeated harassment and persecution by defendants Botwick, Guggenheim and Petaky (fellow students); that defendant Associate Dean Anthony Ross failed to take action against her persecutors; that the University retaliated against her for filing a claim with the Commission on Human Rights and Opportunities; and that the University violated its implied contract with her, violating the CUTPA statute.
Counts One — Three: Intentional Infliction of Emotional Distress
The defendants essentially argue that the facts, as alleged by the plaintiff are not sufficient to support her claims for Intentional Infliction of Emotional Distress. The plaintiff predictably, disagrees.
The law in Connecticut provides that for the plaintiff to maintain an action for intentional infliction of emotional distress against the defendant,
"four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the CT Page 8040 emotional distress sustained by the plaintiff was severe. . . ."
DeLaurentis v. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807 (1991).
"Whether the defendant's conduct and the plaintiffs resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury. Reed v. Signode Corp.,652 F. Sup. 129, 137 (D.Conn., 1986); 1 Restatement (Second), Torts section 46, comment (h) (issue of extreme and outrageous conduct) and comment (j) (issue of severe emotional distress)." Mellaly v.Eastman Kodak Co., 42 Conn. Sup. 17, 18-19, 597 A.2d 846
(1991) (Berdon, J.). The touchstone for the test is established by the phrase that the alleged conduct of the defendant must be "so atrocious so as to exceed all bounds tolerated by a civilized society." Defendants' Memorandum in Support of Motion to Strike, p. 6. "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) Delaurentis v. New Haven, supra, 220 Conn. 267.
The defendants do not raise a meaningful challenge to the allegations relating to elements 1, 3 or 4 of an intentional infliction of emotional distress claim. Specifically, there is no argument that the plaintiff has failed to sufficiently plead intent; causation; or emotional harm. Therefore, the court deems the allegations in the complaint to be sufficiently pled as to these three elements. The only element over which there is argument is the one which mandates that a claim must assert extreme or outrageous conduct.
So the question is: are the allegations in the complaint assertions of conduct which is so atrocious it shocks the sensibilities and exceeds the bounds which should or would be tolerated by a decent or civilized society? To answer this question, the court must wax philosophical for a moment and ask the secondary question: what is a decent or civilized society? The defendants would have the court define acceptable, decent and "civilized behavior" within the context of this case as that which has been delineated in previous case law. As such, the defendants argue that it is acceptable in "civilized" society to belittle, harass, and criticize as long as that conduct reaches only a certain level. See cases cited in the defendants memorandum. Plaintiffs, on the other hand, seek to bring the conduct of the defendants within the area designated as out of bounds, by Connecticut courts. Both parties request that this court engage in a qualitative analysis of the nature, extent and degree of the CT Page 8041 conduct. Both parties request that this court act as the initial arbiter of what is or is not acceptable, decent and civilized behavior.
To resolve the initial issue in dispute, regarding allegations asserting an intentional infliction of emotional distress claim, the court first turns to the facts as alleged in the complaint. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc.v. Sea Shell Associates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "A motion to strike admits all facts well pleaded." Parsons v. UnitedTechnologies Corp., 243 Conn. 66, 68, 700 A.2d 625 (1997). "The court must construe the facts in the complaint most favorably to the plaintiff" (Internal quotation marks omitted.) Faulkner v. United TechnologiesCorp., 240 Conn. 576, 580, 693 A.2d 293 (1997). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotations marks omitted.) Id. If the facts provable under the allegations of the complaint would support a cause of action, the motion to strike must fail. Mingachos v. CBS, Inc., 196 Conn. 91, 109,491 A.2d 368 (1985).
The facts alleged in the complaint to support the Intentional Infliction of Emotional Distress claim are that the defendants hissed at her, yelled and screamed at her; interrupted and harassed her; accosted and swore at her; and falsely and maliciously accused her of sexual displays and of lascivious conduct. The conduct, as alleged in the complaint is persistent and repeated. It is more than individual or isolated instances.
The defendants argue that this conduct falls far short of the requirement for extreme or outrageous behavior. The defendants contextualize the conduct as that consistent with the rigorous and sometimes hurtful environment created by competitive post-graduate academic programs. "It should not escape the court's notice that these allegations occurred in the context of a post-graduate university program, an environment inherently rife with competition and in which students must, necessarily, expose themselves to criticism." Memorandum in Support of Motion to Strike, p. 11. The plaintiff, comparing the behavior in this instant matter to that in cases allowing these claims to go forward, paints the conduct of the defendants as extreme and outrageous. The plaintiff further argues that even if this court does not agree that the conduct is sufficiently extreme or outrageous, it should not act as a "seventh juror" in making factual findings which would best be left to the trier of fact, most likely a jury.
Yale Law School Professor Stephen L. Carter devoted an entire book to a CT Page 8042 discussion of civility and a civilized society[2]. In that book, Professor Carter posits that civility is the duty to treat others in a way befitting a civilized society. He defined civility as, among other things, the sacrifices that we make for the sake of living together amiably and amicably. While Professor Carter and this court acknowledge that civility cannot nor should be legally mandated in all situations under all conditions, given the requirements regarding this cause of action, this discussion about civility bears some relevancy to the matter at hand.
It is precisely because this court would have to engage in a very detailed analysis of the degree and nature of the conduct and about whether or not it fits in or rises to the requisite level, tat the defendants' motion must be denied. There are certain cases when it is apparent, based on the pleadings or the facts alleged, that the claimant is not alleging extreme or outrageous conduct. Such cases often involve isolated incidences of alleged wrong-doing, or conduct so insignificant as to leave no doubt that it is not egregious. The instant matter is not one of those cases. At this point in the litigation, when the court is presented only with a motion to strike, a determination that the alleged conduct is not sufficient to support claims for intentional infliction of emotional distress would be inappropriate. Reasonable minds could disagree as to the severity of the behavior alleged. This being so, this court is loath to state, as a matter of law, that the conduct of the defendants was acceptable and was within the bounds which we, in civilized society, set. Given the pertinent case law, this is, admittedly a close call. For this reason, it is a call that the trier of fact must make.
There is certainly a gap between what we desire most as an ideal society and that which courts are duty bound to enforce as the rules of engagement under the rule of law. It is not the job of the judge to impose his/her personal desires or preferences upon the litigants. Yet, when courts deem behavior acceptable, there is tacit, if unspoken, approval of the conduct. We, the courts, are in effect, saying that the conduct is "ok" — that the behavior is acceptable. This court is loath to say that the conduct alleged in the complaint is acceptable. It may be, after a review of the trier of fact, that one concludes that the conduct did not violate the law. But as a matter of initial impression, the conduct could be deemed to be outrageous or extreme, and thus, violative of the law.
The court is bound to determine, in the first instance, whether the conduct is arguably outrageous. After doing so in this case, the court holds that the plaintiff passes the first level of inquiry. The facts, as alleged in Counts One, Two and Three, are sufficient to support a claim CT Page 8043 for Intentional Infliction of Emotional Distress. Therefore, defendants' motion to strike Counts One, Two and Three is denied.
Count Four: Negligent Infliction of Emotional Distress
The defendants next move to strike the fourth count of the complaint, the negligent infliction of emotional distress claim, arguing that that claim is insufficient because it does not state conduct that would cause emotional distress. While the plaintiffs brief does not specifically address this argument, the court takes the brief to be an objection to the motion to strike the count.
To succeed in a claim for negligent infliction of emotional distress, the plaintiff must prove two facts: (1) negligence on the part of the defendant; see Urban v. Hartford Gas Co., 139 Conn. 301, 304, 93 A.2d 292
(1952); and (2) that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm."Parsons v. United Technologies Corp., 243 Conn. 66, 88, 700 A.2d 655
(1997); Urban v. Hartford Gas Co., supra, 139 Conn. 307.
The factual allegations in the complaint regarding the negligent infliction of emotional distress are: that after the plaintiff reported to the University the harassing, threatening behavior the Associate Dean attempted to intimidate her into dropping her complaints and made other critical remarks about her and that the University failed to address the harassment. The plaintiff alleges in the complaint that the conduct was extreme and that it was "carried out with the knowledge that it probably would cause the plaintiff to suffer severe emotional distress." Count Four, paragraph 9. The plaintiff also claims to have suffered severe emotional distress.
Based on the allegations in the complaint, and the applicable case law, the court finds that Count Four is legally sufficient. The facts, if proven, will support a claim for the cause of action of Negligent Infliction of Emotional Distress. Accordingly, the motion to strike the fourth count is denied.
Count Six: CUTPA Claim
The last basis for the defendants' motion to strike is the defendant's argument that the Sixth Count of the complaint fails to sufficiently allege a violation of CUTPA. In essence, the defendant argues that the plaintiff is seeking to assert an educational malpractice claim as a CUTPA violation. The plaintiff disputes this. CT Page 8044
The complaint alleges that the defendant violated its contract with the plaintiff by "unilaterally and arbitrarily terminat[ing] the plaintiff from her position as a student without affording her any of the due process procedures which it had promised to provide her." Count Six, paragraph 5.
The defendant characterizes this claim as an educational malpractice claim. The plaintiff characterizes it as a CUTPA claim based on a breach of contract theory. Under Connecticut law one may not bring a CUTPA claim based upon a claim for breach of contract when that breach pertains to the "overall quality of educational programs." Gupta v. New BritainGeneral Hospital, 239 Conn. 574, 590-91, 687 A.2d 111 (1996). There are two notable exceptions to this rule. First, a claim is sustainable if it alleges a failure "in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field." Id. Second, a plaintiff may present a claim that the "institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program." Id. The plaintiff argues that her claim falls within this second exception.
The question of whether or not CUTPA should properly be applied to educational institutions has not been conclusively settled by our appellate courts. A case decided by Connecticut District Court Judge Arterton provides illumination and, this court believes, persuasive reasoning regarding why such application should not take place. However, given Connecticut appellate law, this court cannot hold that CUTPA should not apply to educational institutions, merely because they are educational institutions. The allegations in the plaintiffs complaint do not allege educational malpractice, as such. The allegations do state a claim for a breach of a specific contract provision. Therefore, the claim falls within one of the exceptions allowed by our courts. Whether this claim survives to trial is beyond the scope of this court's inquiry. For now, it survives. Consequently, the court denies the defendant's motion to strike Count Six.
 ___________________ Angela Robinson-Thomas, Judge