# STATE OF CONNECTICUT *v.* LOMBARDO BROTHERS MASON CONTRACTORS, INC., ET AL.*

Superior Court, Complex Litigation Docket at Waterbury
File No. X01-UWY-CV-08-5010658S

Memorandum filed February 23, 2009

*Richard Blumenthal,* attorney general, and *McCarter & English, LLP,* for the plaintiff.

* Reversed. *State* v. *Lombardo Bros. Mason Contractors, Inc.,* 307 Conn. 412, 54 A.3d 1005 (2012).

*Morrison Mahoney, LLP, Thomas C. Federico* and *Garcia & Milas,* for the named defendant.

*Litchfield Cavo, LLP,* for the defendant A&J Caulking Company, Inc.

*Levy & Droney P.C.,* for the defendant American Casualty Company of Reading, Pennsylvania.

*Nuzzo & Roberts, L.L.C.,* for the defendant Daniel's Caulking et al.

*Howard Kohn Sprague & FitzGerald, LLP,* for the defendant Arborio Corporation.

*Michael J. Byrne,* for the defendant Di Salvo Ericson Group, Structural Engineers, Inc.

*Ryan Ryan Deluca, LLP,* for the defendant F.B. Mattson Company, Inc.

*Pepe & Hazard* and *Frank A. Sherer III,* for the defendant Gilbane, Inc.

*Neubert, Pepe & Monteith, P.C.,* for the defendant Hartmann-Cox Architects.

*O'Connell Flaherty & Attmore, LLC,* for the defendant Hohmann & Barnard, Incorporated.

*Wiggin & Dana, LLP,* for the defendant Johnson Controls, Inc.

*Wilson Elser Moskowitz Edelman & Dicker, LLP,* for the defendant Kamco Supply Corporation of New England.

*Kenny O'Keefe & Usseglio, P.C.,* for the defendant Karnak Corporation.

*Wolf Horowitz & Etlinger, LLC,* for the defendant Peerless Insurance Company.

*Danaher Lagnese & Sacco, P.C.,* for the defendant Plascal Corporation.

*Sharp Shields & Smith* and *Holahan Gumpper & Dowling,* for the defendant Premier Roofing Company, Inc., et al.

*Williams Walsh & O'Connor, LLC,* for the defendant ProTect of Connecticut, Inc.

*Constantine Antipas,* for the defendant Special Testing Laboratories, Inc.

*Kenneth Naide,* for the defendant Fox Steel Company.

*Kenneth B. Walton, Leslie King* and *Patricia B. Gary,* for the defendant S/L/A/M Collaborative, Inc.

*McNamara & Kenny,* for the defendant Walter D. Sullivan Company, Inc.

*Pepe & Hazard* and *Regnier Taylor Curran & Eddy,* for the defendant USA Contractors, Inc.

*Milber Makris Plousadis & Seiden, LLP,* for the defendant van Zelm Heywood & Shadford, Inc.

*Jason A. Lien, James D. O'Connor, Martin S. Fallon* and *LeClairRyan,* for the defendant Apogee Wausau Group, Inc.

CREMINS, J.

I

BACKSTORY

The plaintiff, the state of Connecticut, brought suit by service of a complaint dated February 14, 2008, against fifteen defendants. There is also a first amended complaint dated August 8, 2008 (first amended complaint). In the second amended complaint now before the court, dated October 17, 2008 (second amended complaint), the state asserts claims against fifteen defendants and fourteen apportionment defendants for the alleged defective design and construction of the University of

Connecticut School of Law library (law library or project).

In the second amended complaint, the state alleges that it acquired the Hartford campus of the University of Connecticut School of Law in the 1980s and subsequently decided to build a new law library. In paragraph forty-one, the state alleges that "[t]he [p]roject was designed starting in 1992 and construction commenced in 1994, with completion in 1996." Additionally, the state alleges in paragraph forty-two that "[t]he [s]tate began occupying the [l]ibrary on January 31, 1996."

The state further alleges in paragraphs forty-three and forty-four that "[d]uring the months and years following completion of the [p]roject and occupancy by the [s]tate [in 1996], the [s]tate began to experience problems with water intrusion into the [l]ibrary," and "that in the [2000s] the [s]tate retained forensic engineers to investigate the full extent and likely causes of the problem."

This memorandum of decision addresses the following motions:

1. The motion to strike filed by the defendant A&J Caulking Company, Inc., on November 13, 2008, and directed at count twenty-two of the second amended complaint (negligence).

2. The motion to strike filed on October 1, 2008, by the defendant American Casualty Company of Reading, Pennsylvania (American Casualty), and directed at count twenty-six of the first amended complaint (performance bond).

3. The objection filed by the defendant Daniel's Caulking to the state's motion to strike its first and second special defenses, dated November 3, 2008 (statute of limitations and laches), directed at count twenty-one of the first amended complaint (negligence).

4. The objection filed by the apportionment defendant Andrew Peterson to the state's motion to strike his first and second special defenses, dated December 5, 2008 (statute of limitations and laches), directed at count thirty-two of the second amended complaint (negligence).

5. The motion to strike dated October 1, 2008, filed by the defendant Arborio Corporation, directed at count ten of the first amended complaint (negligence) and supplemental motion to strike dated November 17, 2008, directed at count forty of the second amended complaint (breach of fiduciary duty).

6. The motion to strike dated November 13, 2008, filed by the apportionment defendant Di Salvo Ericson Group, Structural Engineers, Inc. (Di Salvo), directed at count thirty-eight of the second amended complaint (negligence) and objection to the state's motion to strike Di Salvo's special defense dated November 13, 2009 (statute of limitations).

7. The motion to strike dated October 1, 2008, filed by the defendant F.B. Mattson Company, Inc. (F.B. Mattson), directed at count seventeen (breach of contract) and count eighteen (negligence) of the first amended complaint.

8. The motion to strike dated October 1, 2008, filed by the defendant Gilbane, Inc. (formerly known as Gilbane Building Company), directed at count five (negligence), count six (breach of contract), count seven (negligent misrepresentation), count eight (intentional misrepresentation) and count nine (breach of fiduciary duty) of the first amended complaint.

9. The motion to strike dated November 14, 2008, filed by the defendant Hartmann-Cox Architects, directed at count four of the second amended complaint (negligence).

10. The motion to strike dated October 1, 2008, filed by the defendant Hohmann & Barnard, Incorporated, directed at count twenty-four of the first amended complaint (product liability).

11. The motion for summary judgment dated November 17, 2008, filed by the apportionment defendant Johnson Controls, Inc., directed at count thirty-five of the second amended complaint (negligence).

12. The motion to strike dated November 17, 2008, filed by the apportionment defendant Kamco Supply Corporation of New England, directed at count thirty-three of the second amended complaint (product liability).

13. The motion to strike dated November 17, 2008, filed by the apportionment defendant Karnak Corporation, directed at count thirty-seven of the second amended complaint (product liability).

14. The motion to strike dated September 30, 2008, filed by the defendant Lombardo Brothers Mason Contractors, Inc. (Lombardo), directed at count thirteen (breach of contract), count fourteen (negligence), count fifteen (negligent misrepresentation) and count sixteen (intentional misrepresentation) of the first amended complaint.

15. The motion to strike dated October 1, 2008, filed by the defendant Peerless Insurance Company (Peerless), directed at count twenty-five of the first amended complaint (performance bond).

16. The December 1, 2008 objection to the state's motion to strike filed by the apportionment defendant Plascal Corporation, directed to the first and second special defenses (abandonment and statute of limitations) to count thirty-six of the second amended complaint (product liability).

17. The motion to strike dated November 4, 2008, filed by the apportionment defendants Premier Roofing Company, Inc. (Premier), and Titan Roofing, Inc. (Titan), directed at count thirty (Premier—negligence) and count thirty-one (Titan—negligence) of the second amended complaint.

18. The motion to strike dated October 1, 2008, filed by the defendant ProTect of Connecticut, Inc., directed at count nineteen of the first amended complaint (negligence).

19. The motion to strike dated October 1, 2008, filed by the defendant Special Testing Laboratories, Inc., directed at count eleven (negligence) and count twelve (negligent misrepresentation) of the first amended complaint.

20. The motion to strike dated October 1, 2008, filed by the defendant Fox Steel Company, directed at count twenty of the first amended complaint (negligence).

21. The motion for summary judgment dated September 29, 2008, filed by the defendant S/L/A/M Collaborative, Inc., as to count one (negligence), count two (breach of contract) and count three (breach of fiduciary duty) of the first amended complaint.

22. The motion to strike dated November 14, 2008, filed by the apportionment defendant Walter D. Sullivan Company, Inc., directed at count thirty-four of the second amended complaint (negligence).

23. The motion to strike dated November 14, 2008, filed by the apportionment defendant USA Contractors, Inc. (formerly known as United Stone), directed at count twenty-eight of the second amended complaint (negligence).

24. The motion to strike dated November 17, 2008, filed by the apportionment defendant van Zelm Heywood & Shadford, Inc., directed at count thirty-nine of the second amended complaint (negligence).

25. The motion for summary judgment dated October 1, 2008, filed by the defendant Apogee Wausau Group, Inc. (doing business as Wausau Windows and Wall Systems, formerly known as Wausau Metal Corporation), directed at count twenty-three of the amended complaint (product liability).

It should be noted that certain of those motions were directed toward the first amended complaint while others were directed toward the second amended complaint. Counts one through thirty-one of the second amended complaint are addressed to the same parties and allege the same causes of action as counts one through thirty-one of the second amended complaint. The second amended complaint adds counts thirty-two through forty-one.

## II

## LEGAL DISCUSSION

### A

### Standard of Review—Summary Judgment

"A court shall render summary judgment 'if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Practice Book § 17-49." *Stearns & Wheeler, LLC* v. *Kowalsky Bros., Inc.*, 289 Conn. 1, 7, 955 A.2d 538 (2008). "The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." *Wilson* v. *New Haven*, 213 Conn. 277, 279, 567 A.2d 829 (1989). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse

claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Piteo* v. *Gottier*, 112 Conn. App. 441, 444–45, 963 A.2d 83 (2009).

In opposing a motion for summary judgment, the "non-moving party may not rely on conclusory allegations or unsubstantiated speculation." *Scotto* v. *Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Furthermore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## B

### Standard of Review—Motion to Strike

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003). "It is incumbent on a plaintiff to allege some recognizable cause of action in his complaint." (Internal quotation marks omitted.) *Larobina* v. *McDonald*, 274 Conn. 394, 402, 876 A.2d 522 (2005). "The burden of alleging a recognizable cause of action rests upon the plaintiff." *DeMello* v. *Plainville*, 170 Conn. 675, 677, 368 A.2d 71 (1976). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation

marks omitted.) *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 294, 914 A.2d 996 (2007). A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Internal quotation marks omitted.) *Mora* v. *Aetna Life & Casualty Ins. Co.*, 13 Conn. App. 208, 211, 535 A.2d 390 (1988). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, supra, 498.

In ruling on a motion to strike, "[t]he court must construe the facts in the complaint most favorably to the plaintiff . . . ." (Internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." (Internal quotation marks omitted.) *Clohessy* v. *Bachelor*, 237 Conn. 31, 33 n.4, 675 A.2d 852 (1996). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, supra, 580.

"[A] claim that an action is barred by . . . the statute of limitations must be pleaded as a special defense, not raised by a motion to strike. . . . [T]here are two exceptions to that holding. Those exceptions relate to situations in which a motion to strike, filed instead of a special defense of a statute of limitations, would be permitted. If all of the facts pertinent to the statute of limitations are pleaded in the complaint and the parties agree that they are true, or if a statute creating the cause of action on which the plaintiff relies fixes the time within which the cause of action must be asserted,

a motion to strike would be allowed." (Citation omitted; internal quotation marks omitted.) *Girard* v. *Weiss*, 43 Conn. App. 397, 415, 682 A.2d 1078, cert. denied, 239 Conn. 946, 686 A.2d 121 (1996).

Typically, statute of limitations and statute of repose defenses are best raised in the form of a special defense. See *Forbes* v. *Ballaro*, 31 Conn. App. 235, 239, 624 A.2d 389 (1993). Here, however, the state admits in the four corners of both its first amended complaint and second amended complaint that it knew of the alleged water intrusion problems within months of the state's January 31, 1996 occupancy of the law library. Consequently, at the initial status conference with the court, *Langenbach, J.*, on July 14, 2008, the court allowed the defendants in this action to brief the issue of the applicability of the statute(s) of repose and statute(s) of limitation by way of a motion to strike to resolve this important issue early on in the case.

C

Nullum Tempus Occurrit Regi

The literal translation of this ancient maxim is "no time runs against the King." Black's Law Dictionary (4th Ed. Rev. 1968). The doctrine originated in the English common law as a declaration that the statute of limitations could not be applied against the Crown. See *United States* v. *Thompson*, 98 U.S. 486, 489, 25 L. Ed. 194 (1879). "In England, as early as 1236 statutes were enacted prohibiting real property actions if they were based on a seisin prior to a given date, such as the coronation of Henry II." "Developments in the Law Statutes of Limitations," 63 Harv. L. Rev. 1177, 1177 (1950). "The modern time bar statutes first appeared in England in The Limitations Act of 1623. This statute provided different time limits for different actions, running from the time the action accrued." J. Mack, "Nullum Tempus: Governmental Immunity to Statutes of Limitation,

Laches, and Statutes of Repose," 73 Def. Couns. J. 180, 181 (April, 2006).

"The rule of nullum tempus [occurrit] regi has existed as an element of the English law from a very early period. . . . The common law fixed no time as to the bringing of actions. Limitations derive their authority from statutes. The king was held never to be included, unless expressly named. No laches was imputable to him. These exemptions were founded upon considerations of public policy. It was deemed important that, while the sovereign was engrossed by the cares and duties of his office, the public should not suffer by the negligence of his servants." *United States* v. *Thompson,* supra, 98 U.S. 489. "The rationale for the rule that actions by the government are not barred by a statute of limitation is that public rights should not be prejudiced by the tardiness of the government officials to whom those rights are entrusted. The purpose of this immunity is to preserve public rights when the government is slow to assert them on the public's behalf." 51 Am. Jur. 2d, Limitation of Actions § 78 (2008).

The doctrine was imparted to our American justice system as one of the incidents of sovereignty. *United States* v. *Thompson,* supra, 98 U.S. 489–90. The United States Supreme Court in *United States* v. *Thompson,* supra, 489–90, stated: "When the colonies achieved their independence, each one took these prerogatives, which had belonged to the crown; and when the national Constitution was adopted, they were imparted to the new government as incidents of the sovereignty thus created."

### III

### GILBANE AND THE CONTRACT WITH THE STATE— MOTION TO STRIKE COUNTS FIVE THROUGH NINE OF THE FIRST AMENDED COMPLAINT

On or about January 4, 1994, Gilbane and the state entered into a contract (contract) pursuant to which

Gilbane agreed to furnish the state with construction management services in connection with the project. Design of the project began in 1992, sixteen years before the state commenced this action against the various defendants. The project was completed in 1996, more than twelve years ago. The state has brought this action by way of a complaint originally dated February 14, 2008, and filed with the court on March 25, 2008.

The state selected Gilbane as construction manager for the project pursuant to General Statutes § 4b-99 (c), as revised and as in effect at the time. That statute provides in relevant part: "The [commissioner of public works] shall negotiate a contract for [construction management] services with the most qualified firm from among the list of firms submitted by the [state construction services selection panel], at compensation which he determines in writing to be fair and reasonable to the state. . . ." General Statutes § 4b-99 (c). Accordingly, under the provisions of the statute, the state, acting through its chief deputy commissioner of the department of public works (department), negotiated and entered into the contract with Gilbane.

The contract included certain provisions related to Gilbane's potential risks with respect to the project. The contract contained, inter alia: (1) a period of repose provision; (2) a limitation of remedies provision; and (3) a specific articulation of the liability considerations pursuant to which the parties negotiated the contract's limitations and allocations of risk.

The contract enumerated several "considerations upon which the liability provisions as between [the state and Gilbane] are based . . . ." These considerations included "the potential for the emergence of diverse interests and conflicts between and among the [p]roject participants, affected entities, and other beneficiaries of the [p]roject; the possibility that [Gilbane] can be

named as a defendant in a lawsuit and the transaction and administrative costs that characterize the existing legal liability system; the heightened possibility of [Gilbane] being held jointly liable for a disproportionate share of its comparative liability under existing law because of the centralized organizational and management structure for the [p]roject . . . and the need to establish for purposes of contractual accountability an appropriate and reasonable balance of liabilities between the parties . . . ." With these considerations in mind, Gilbane and the state bargained "in good faith . . . for the allocations of the risk and the limitations set out [in the contract]."

The state and Gilbane agreed that "[t]he services performed pursuant to [the contract] shall be considered professional work to which any statutory period of repose *then otherwise applicable to professional design work* under Connecticut law shall apply." (Emphasis added.)

At the time Gilbane and the state entered into the contract and at all times during which Gilbane performed services pursuant to the contract, the period of repose applicable to design professionals in Connecticut was set out in General Statutes (Rev. to 1993) § 52-584a. General Statutes (Rev. to 1993) § 52-584a (a) provides in relevant part: "No action or arbitration, whether in contract, in tort, or otherwise . . . to recover damages . . . for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of an improvement to real property . . . shall be brought against any architect or professional engineer . . . *more than seven years after substantial completion of such improvement.*" (Emphasis added.)

The state and Gilbane also included a limitation of remedies provision in the contract, which provides that

"[t]he remedies afforded the [department] under [the contract] shall be the [department's] sole and exclusive remedies with respect to [Gilbane] for liability, loss, damage or expense, irrespective of the nature of the cause of action, arising out of or in connection with [the contract]."

Gilbane is moving to strike all counts directed against it by the state on the basis of the contract's incorporation of the express period of repose provision of § 52-584a (a) and the limitation of remedies provision in the contract. Gilbane argues that the plain and unambiguous terms of the contract render all of the state's counts untimely and, furthermore, that the contract's limitation of remedies provision precludes the state from proceeding against Gilbane with the tort counts, which the state bases on theories of Gilbane's alleged negligence, breach of fiduciary duty, negligent misrepresentation and intentional misrepresentation.

The state argues that the doctrine of nullum tempus prevents Gilbane from raising a statute of limitations or statute of repose defense to the state's claims. The state cites *State* v. *Goldfarb*, 160 Conn. 320, 278 A.2d 818 (1971), in which the court stated: "The State holds the immunities [to statutes limiting rights] belonging by the English common law to the King." (Internal quotation marks omitted.). Id., 323–24. The state also cites *State* v. *Shelton*, 47 Conn. 400 (1879), in which the court stated: "It is . . . a general rule in the interpretation of statutes limiting rights and interests, not to construe them to embrace the sovereign power or government, unless the same be expressly named therein, or intended by necessary implication." (Internal quotation marks omitted.) Id., 405.

This argument, however, looks through the wrong end of the telescope. Gilbane is neither asserting a statute of limitations nor a statute of repose special defense. Rather, Gilbane argues that the state duly negotiated a

contract with Gilbane containing an express provision by which the state agreed that any action it might bring against Gilbane arising out of or in connection with the project would be brought within a period of seven years from substantial completion of the project.

The contract plainly states that Gilbane and the state premised the contract's limitations and allocation of risk on a host of considerations that the state now claims do not apply to the state. The contract, by express reference to the repose period contained in § 52-584a, contains a repose provision establishing a specific time period within which the state agreed to bring any action against Gilbane. The contract also includes a limitation of remedies provision in which the state agreed, except in certain instances inapplicable to this case, that the contract provided the state with its sole and exclusive remedies against Gilbane, irrespective of the nature of the cause of action, for liability arising out of or in connection with the contract.

"A contractual limitation on the time to bring suit is not a statute of limitations. Instead, it is a provision of the contract, and is binding upon the parties." R. Newman & J. Wildstein, Tort Remedies in Connecticut (Cum. Sup. 2008) § 24-3, p. 186, citing *Bocchino* v. *Nationwide Mutual Fire Ins. Co.*, 246 Conn. 378, 386, 716 A.2d 883 (1998). "*[S]uch a condition requiring suit to be brought within one year does not operate as a statute of limitations . . . .*" (Citation omitted; emphasis in original; internal quotation marks omitted.) *Bocchino* v. *Nationwide Mutual Fire Ins. Co.*, supra, 385.[1] Furthermore, "[t]his condition is a part of the

---

[1] In *Bocchino*, the Supreme Court relied on an earlier case, *Chichester* v. *New Hampshire Fire Ins. Co.*, 74 Conn. 510, 51 A. 545 (1902). In that case, the court stated that a "provision in [an insurance] policy sued upon requiring an action to be brought within twelve months . . . does not operate as a statute of limitations; it is a part of the contract; the rights of the parties flow from the contract, and must be governed by the rules of law applicable to contracts. Such a provision in a contract of insurance is valid and binding upon the parties." (Internal quotation marks omitted.) Id., 512–13.

contract so that it controls the rights of the parties under the contract and, hence, such rights must be governed by the rules of law applicable to contracts." (Internal quotation marks omitted.) Id. Finally, it is well established that "[c]ontracting parties are free to impose conditions upon contractual liability." (Internal quotation marks omitted.) *John T. Brady & Co.* v. *Stamford*, 220 Conn. 432, 449–50, 599 A.2d 370 (1991).

Contract provisions that limit the time in which a lawsuit can be brought are an enforceable prerequisite with respect to liability. These conditions are a separate concept from the statute of limitations and therefore must be met as a predicate to any legal action.

Any attempt by the state to argue that notwithstanding the simple, unambiguous contractual provisions in its own contract, the state should enjoy an immunity from the statute of limitations or statute of repose with regard to filing suit would render these provisions of the contract meaningless and would contradict fundamental and steadfast tenets of contract law, which require courts to give meaning to each and every clause of the contract. For example, the Appellate Court in *Wren* v. *MacPherson Interiors, Inc.*, 69 Conn. App. 349, 794 A.2d 1043 (2002), stated that courts must "interpret contract language in accordance with a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . .

Unlike the present case, which involves a construction contract, the factual underpinning of *Chichester* and its progeny is an insurance policy. Nevertheless, the underlying logic of the *Chichester* line of cases should be applicable to any contract action. Additionally, although the court is aware that "[t]here is a great conflict in the authorities as to whether any representation or agreement that the statute of limitations will not be interposed is valid and effectual"; 17A C.J.S. 221, Contracts § 244 (1999); this court finds that in accordance with the principle established in *Chichester*, Connecticut allows such agreements and will enforce them.

If the terms of [a contract] are clear, their meaning cannot be forced or strained by an unwarranted construction to give them a meaning which the parties never intended. . . . [A] contract is to be construed as a whole and all relevant provisions [must] be considered together." (Citation omitted; internal quotation marks omitted). Id., 354–55. The Supreme Court has stated: "[I]n construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 743, 945 A.2d 936 (2008).

The provision in the contract incorporating a period of repose functions as a contractual limitation to which the doctrine of nullum tempus simply does not apply. Specifically, contractual obligations must bind governmental entities in the same manner those provisions bind any other contracting party. E.g., *Evergreen Park School District No. 124* v. *Federal Ins. Co.*, 276 Ill. App. 3d 766, 769, 658 N.E.2d 1235 (1995); *Bond County Community School District No. 2* v. *Indiana Ins. Co.*, 269 Ill. App. 3d 488, 492–93, 647 N.E.2d 293, leave to appeal denied, 162 Ill. 2d 564, 652 N.E.2d 339 (1995). To permit otherwise offends one of the deepest rooted principles of our law. See *Bond County Community School District No. 2* v. *Indiana Ins. Co.*, supra, 492 ("[t]he idea that a governmental body should be able to renege or avoid its contractual obligations is certainly repugnant to the concept that a government should serve its citizens").

As noted previously, the state, acting through its chief deputy commissioner of the department, negotiated and entered into the contract with Gilbane. The state and Gilbane agreed that "[t]he services performed pursuant to [the contract] shall be considered professional work to which any statutory period of repose then otherwise

applicable to professional design work under Connecticut law shall apply." Accordingly, the state, by the terms of the contract, not by statute, agreed to the incorporation of a seven year period of repose by reference to the period of repose "then otherwise applicable to professional design work" under § 52-584a.

Completion of the project occurred in 1996. At the latest, therefore, the state had until 2003 to bring this action. Instead, the state waited until 2008, more than twelve years after completion and nearly twice as long as the period of repose agreed to in the contract.

Although no Connecticut court has specifically addressed this issue, other jurisdictions have enforced contractual limitations provisions against governmental entities. The Illinois courts have enforced notice provisions and limitations on suit provisions in contracts for insurance against the government and dismissed, as untimely, actions based on those contracts. See *Evergreen Park School District No. 124* v. *Federal Ins. Co.*, supra, 276 Ill. App. 3d 768; *Bond County Community School District No. 2* v. *Indiana Ins. Co.*, supra, 269 Ill. App. 3d 489.

As a further example, the United States District Court for the District of New Jersey also enforced contractual suit limitation provisions in an insurance contract against a governmental entity, concluding that "[i]n the contractual setting, States can bind themselves just like private parties." *Port Authority of New York & New Jersey* v. *Affiliated FM Ins. Co.*, Docket No. 91-2907, 2000 U.S. Dist. LEXIS 20724, *77 (D. N.J. June 6, 2000) (Bissell, J.).

It should be noted that these other jurisdictions, Illinois and New Jersey, also adhere to the common-law doctrine of nullum tempus. Those same jurisdictions distinguish, however, between enforcement of contractual limitations on the state's ability to bring suit beyond

a certain time period and a private party's ability to assert a statute of limitations or statute of repose special defense to an action brought by the state. As the court stated clearly in *Bond County Community School District No. 2* v. *Indiana Ins. Co.*, supra, 269 Ill. App. 3d 495, "the doctrine of nullum tempus [does] not apply to contractual suit limitations [and] the doctrine has never been used to avoid contractual suit limitations . . . ." "What incentive is there to make . . . government officials more diligent in their duties, if . . . the government does not have to be diligent in protecting its rights?" Id., 497. As illustrated by the case law cited previously, the enforcement of contractual limitations on suit provisions can coexist with the doctrine of nullum tempus. See *Evergreen Park School District No. 124* v. *Federal Ins. Co.*, supra, 276 Ill. App. 3d 770.

Gilbane is entitled to rely on and to receive the benefits of the limitation on suit provision in the contract. See 1 S. Williston, Contracts (4th Ed. Lord 2007) § 1:1 ("Contract law is designed to protect the expectations of the contracting parties. It is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining. The goal of contract law is to hold parties to their agreements so that they receive the benefits of their bargains."). To hold otherwise and vitiate the period of repose provision in the contract clearly contradicts the long established rules that a contract cannot be interpreted "in a way that renders a provision superfluous." (Internal quotation marks omitted.) *O'Connor* v. *Waterbury*, supra, 286 Conn. 743. Moreover, allowing the state to avoid an express contractual provision would have grave consequences to commerce generally. Who would contract with the state if the contract could not be enforced by both parties?

The contract provision incorporates the statutory period of repose applicable to professional design work

then otherwise applicable under Connecticut law so that the parties have a reference by which to measure the time period within which the state could bring claims against Gilbane. To conclude otherwise would render this repose provision utterly meaningless and in clear violation of the requirement that courts not torture the meaning of contractual language or render a clause of a contract superfluous. For example, the Supreme Court in *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008), stated: "A court will not torture words to import ambiguity where the ordinary meaning of leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) At oral argument, the state argued that the contract was not referring to § 52-584a but a statute that *might* be passed in the future that *might* specifically apply by specific terms to the state. Circulus in demonstrando.

Had Gilbane known that the state could ignore the contract's limitations provision and be thereby permitted to proceed against Gilbane, Gilbane would likely have altered the consideration underlying the contract. Specifically, had Gilbane realized the state could disregard the contractual obligations and wait arguably an infinite amount of time after completion of construction to bring suit, Gilbane could well have incorporated that potentiality into its pricing for the contract. See *Bond County Community School District No. 2* v. *Indiana Ins. Co.*, supra, 269 Ill. App. 3d 497. Indeed, the court in *Bond County Community School District No. 2* clearly articulated the economic consequences of ignoring contractual limitation provisions: "If the defendants had known that they might be liable contrary to the suit-limitation provisions, their rates most surely would have been higher to cover the increased risks caused by an unlimited time exposure to liability. . . . [I]f [the court] grant[s] the school district's prayer, [the court] not only would be allowing the school district to renege

on the terms of its agreement with the defendants, but [the court] also may be allowing the school district to escape paying a proper premium for the additional risks incurred by the defendants." Id.

The time limitation provisions in the contract function to "prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and . . . to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 199, 931 A.2d 916 (2007). Gilbane bargained for the provision so that the liability considerations of the contract promoted "repose by giving security and stability to [its] affairs." (Internal quotation marks omitted.) *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 150, 159, 464 A.2d 18 (1983).

Therefore the motions to strike counts five, six, seven, eight and nine are granted.

IV

NULLUM TEMPUS AND STATUTES OF REPOSE, GENERAL STATUTES §§ 52-577, 52-577a, 52-584, 52-584a; MOTION FOR SUMMARY JUDGMENT AS TO COUNTS 1, 2, 3 AND 35; MOTIONS TO STRIKE COUNTS 4, 10, 11, 12, 14, 15, 16, 18, 19, 20, 22, 23, 24, 28, 30, 31, 33, 34, 37, 38, 39 AND 40; MOTIONS TO STRIKE SPECIAL DEFENSES TO COUNTS 21, 32 AND 36

The court can find no Connecticut case law addressing the question of the application of the doctrine of nullum tempus to statutes of repose.

As a starting point, it is important to understand the difference between the statutes of limitations and the statutes of repose: "Undoubtedly, statutes of repose differ in some respects from statutes of limitation. While statutes of limitation are sometimes called statutes of repose, the former bars right of action unless it is filed within a specified period of time after injury occurs, while statute[s] of repose [terminate] any right of action after a specific time has elapsed, regardless of whether there has as yet been an injury. (Internal quotation marks omitted.) *Baxter* v. *Sturm, Ruger & Co.*, 230 Conn. 335, 341, 644 A.2d 1297 (1994).

A statute of repose does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action from ever arising. The function of the statute of repose is to define substantive rights rather than to alter or modify a remedy. *Daidone* v. *Buterick Bulkheading*, 191 N.J. 557, 924 A.2d 1193 (2007).

"Unlike a true statute of limitations, which limits the time in which a plaintiff may bring suit *after* the cause of action accrues, a statute of repose * * * potentially bars a plaintiff's suit *before* the cause of action arises. . . . A statute of repose does not deny a remedy for a vested cause of action but, rather, bars the action before it ever arises." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Groch* v. *General Motors Corp.*, 117 Ohio St. 3d 192, 217, 883 N.E.2d 377 (2008). A statute of repose "involves a cause of action that never accrues and thus is prevented from vesting once the . . . repose period has passed. Because there is no property right, there can be no taking." Id., 223.

A statute of repose is intended to eliminate prejudice "by placing an outer limit on the time within which a claim may be asserted, thereby circumscribing the long tail exposure to liability that may result from the application of the discovery rule." (Internal quotation marks

omitted.) *Cammon* v. *West Suburban Hospital Medical Center*, 301 Ill. App. 3d 939, 945, 704 N.E.2d 731 (1998). In other words, such a statute "is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action." (Internal quotation marks omitted.) *Goodman* v. *Harbor Market, Ltd.*, 278 Ill. App. 3d 684, 690, 663 N.E.2d 13 (1995), leave to appeal denied sub nom. *Goodman* v. *Goodman*, 168 Ill. 2d 589, 671 N.E.2d 730 (1996).

Such statutes reflect the legislative conclusion that a point in time arrives beyond which a potential defendant should be immune from liability for past conduct. *Keegan* v. *Aetna Life & Casualty Ins. Co.*, 42 Conn. App. 803, 809, 682 A.2d 132, cert. denied, 239 Conn. 942, 686 A.2d 120 (1996). Statutes of repose also are intended "to avoid the difficulty in proof and record keeping which suits involving older [claims] impose." (Internal quotation marks omitted.) Id. They are intended "to protect certain classes of persons, such as architects, engineers, and contractors, from claims that are virtually indefensible after the passage of time." *Trunkhill Capital, Inc.* v. *Jansma*, 905 S.W.2d 464, 468 (Tex. App. 1995), reh'g of writ of error overruled (May 10, 1996).

"In response to the widespread adoption of the discovery rule in statutes of limitations, a number of jurisdictions determined that it was necessary to circumvent the elastic nature of the accrual of actions by explicitly requiring plaintiffs to bring suit a set number of years from certain defendant[s'] wrongful actions." J. Mack, supra, 73 Def. Couns. J. 183; see generally note, "The Fairness and Constitutionality of Statutes of Limitations for Toxic Tort Suits," 96 Harv. L. Rev. 1683 (1983) (discussing need for discovery of damage rules and rejection of statutes of repose). "These 'statutes of repose' were first employed in the context of architects, engineers, and contractors who were held liable for injuries

caused by their negligence despite lack of privity of contract in the 1950s." J. Mack, supra, 183; see S. Speiser, C. Krause & A. Gans, American Law of Torts (2003) § 5:35, p. 391 n.27.

"Thus, even though the discovery rule had not yet been widely adopted, these builders could still be held liable for their negligence decades after the event occurred because the actual injury caused by their negligence might not occur until after many years of use. When a plaintiff was injured by negligence that occurred thirty years previously, even traditional statutes of limitations without the discovery rule would not begin to run until the injury." J. Mack, supra, 73 Def. Couns. J. 183–84; see *Howell* v. *Burk*, 90 N.M. 688, 693, 568 P.2d 214 (N.M. App.), cert. denied sub nom. *PPG Industries, Inc.* v. *Howell*, 91 N.M. 3, 569 P.2d 413 (1977). "In response to this perceived timeless liability, builders' professional associations pushed legislation that set a certain time period after completion of the work in which any claims relating to the work must be brought. Today, such statutes exist in over forty-five states and in the District of Columbia.

"In response to the application of the discovery rule to products liability cases later in the twentieth century, many jurisdictions (twenty-nine states) passed statutes of repose for products liability cases." J. Mack, supra, 73 Def. Couns. J. 184; see J. Zitter, annot., Validity and Construction of Statute Terminating Right of Action for Product-Caused Injury at Fixed Period After Manufacture, Sale, or Delivery of Product, 30 A.L.R.5th 1 (1995). "These statutes, like the earlier statutes designed to protect builders, avoid the element of the plaintiff's delay entirely by prohibiting suit beyond the initial entry of the product into the market. Statutes of repose are not subject to any tolling provisions, thus doctrines such as the discovery rule do not apply." J. Mack, supra, 184; *First United Methodist Church of Hyattsville* v.

*U.S. Gypsum Co.*, 882 F.2d 862, 866 (4th Cir. 1989), cert. denied, 493 U.S. 1070, 110 S. Ct. 1113, 107 L. Ed. 2d 1020 (1990). "A plaintiff must satisfy the time limits of both the applicable statute of limitations and the statute of repose in order to file suit." J. Mack, supra, 184; see, e.g., *O'Brien* v. *Hazelet & Erdal*, 410 Mich. 1, 15, 299 N.W.2d 336 (1980).

"The policy goal of statutes of repose is solely 'to relieve potential defendants from anxiety over liability for acts committed long ago.' " J. Mack, supra, 73 Def. Couns. J. 184; *Goad* v. *Celotex Corp.*, 831 F.2d 508, 511 (4th Cir. 1987), cert. denied, 487 U.S. 1218, 108 S. Ct. 2871, 101 L. Ed. 2d 906 (1988). " 'Statutes of repose are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists.' " J. Mack, supra, 184; *Goad* v. *Celotex Corp.*, supra, 511. "Thus legislatures, fearing that certain economically valuable classes of potential defendants would be crippled by the lack of a guarantee of freedom from liability after a given point, pass statutes of repose in order to encourage them to continue to do business and to lower insurance rates. These legislatures determine that statutes of limitations do not adequately serve this goal of protecting defendants because of the potential for accommodation of tardy plaintiffs, and thus completely remove any relevance of the plaintiff's reasons for delay.

"Statutes of repose are extremely controversial because they can bar a plaintiff from bringing suit before the plaintiff is even injured, depriving [the plaintiff] of a cause of action regardless of how quickly [the plaintiff] files suit if the statute of repose has run before the injury occurs." J. Mack, supra, 73 Def. Couns. J. 184; see note, supra, 96 Harv. L. Rev. 1684 ("toxic tort

statutes of limitations [that do not incorporate the discovery rule] have the effect of eliminating a victim's claim before it can even arise"). "Recognizing the tension between protecting defendants and depriving a plaintiff's . . . cause of action regardless of when the injury is discovered, legislatures make the time limitations contained in statutes of repose much longer than statutes of limitations, typically around ten years." J. Mack, supra, 184; see, e.g., Ala. Code § 6-5-502; General Statutes § 52-577a; Fla. Stat. Ann. § 95.031 (2); Tenn. Code Ann. § 29-28-103.

"Courts have split as to whether statutes of repose are constitutional. A number of states have declared the statutes unconstitutional based on open courts"; J. Mack, supra, 73 Def. Couns. J. 184–85; see *Hazine* v. *Montgomery Elevator Co.*, 176 Ariz. 340, 861 P.2d 625 (1993) (en banc); *Daugaard* v. *Baltic Cooperative Building Supply Assn.*, 349 N.W.2d 419 (S.D. 1984); *Kennedy* v. *Cumberland Engineering Co.*, 471 A.2d 195 (R.I. 1984); *Berry* v. *Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985); due process; J. Mack, supra, 185; see *Lankford* v. *Sullivan, Long & Hagerty*, 416 So. 2d 996 (Ala. 1982); or equal protection; J. Mack, supra, 185; see *Heath* v. *Sears, Roebuck & Co.*, 123 N.H. 512, 464 A.2d 288 (1983); *Hanson* v. *Williams County*, 389 N.W.2d 319 (1986), on appeal after remand, 452 N.W.2d 313 (N.D. 1990); and "clauses in their state constitutions. These courts essentially rest their opinions on the idea that 'the right to recover for personal injuries is an important substantive right.' " J. Mack, supra, 185, quoting *Hanson* v. *Williams County*, supra, 389 N.W.2d 325.

"Thus, legislatures cannot deprive their citizens of the right to be heard in court on mere economic grounds. However, many other courts have held that statutes of repose are constitutional"; J. Mack, supra, 73 Def. Couns. J. 185; see, e.g., *Cheswold Volunteer Fire Co.* v.

*Lambertson Construction Co.*, 489 A.2d 413 (Del. 1984); *Love* v. *Whirlpool Corp.*, 264 Ga. 701, 449 S.E.2d 602 (1994); *Dague* v. *Piper Aircraft Corp.*, 418 N.E.2d 207 (Ind. 1981); *Jones* v. *Five Star Engineering, Inc.*, 717 S.W.2d 882 (Tenn. 1986); "notably federal courts under the United States Constitution." J. Mack, supra, 185; see, e.g., *Dinh* v. *Rust International Corp.*, 974 F.2d 500 (4th Cir. 1992); *Eaton* v. *Jarvis Products Corp.*, 965 F.2d 922 (10th Cir. 1992); *Harris* v. *Black Clawson Co.*, 961 F.2d 547 (5th Cir. 1992). "These courts reason that since the legislature provides the causes of action, the legislature may take them away, stating that there 'is no federal or state constitutional right to the continued existence of common law causes of action.' " J. Mack, supra, 185, quoting *Dinh* v. *Rust International Corp.*, supra, 502. . . .

"Statutes of repose constitute a far different matter than statutes of limitations and laches when nullum tempus is examined in light of its policy support. Statutes of repose concentrate exclusively on protecting defendants and encouraging their business by limiting their liability. The legislative determination that certain defendants must be free from suit after a set period regardless of the merits of the delay would be completely frustrated by the use of nullum tempus to provide immunity to statutes of repose. Further, the legislative protection of certain industries is the exact type of change in circumstances that justifies abandoning a common law doctrine.

"Courts that fail to account for the distinction between statutes of limitation and repose do so because they fail to look deeper into the policies behind the differing statutes. Thus, in *Rutgers* v. [*Grad Partnership*, 269 N.J. Super. 142, 148, 634 A.2d 1053 (1993), cert. denied, 135 N.J. 470, 640 A.2d 851 (1994)], the court proclaimed that . . . whether [the statute] is considered . . . a repose provision, the fact remains

that it is still a limitations provision which is triggered by the running of time. It merely calculates the [running of that] time from a different starting point. The reasons for its existence, though, are no different from the policy considerations underlying all statutes of limitations. That is, it seeks to protect certain defendants from having to remain potentially liable for life.

"Although perhaps that is the ultimate aim of both types of statutes, it is the strength of the protection afforded that is the reason behind increasing the normal protections afforded by statutes of limitations for statutes of repose in the first place.

"Nullum tempus excuses governmental actors on the basis of public policies that are undermined when applied to statutes of repose. The first policy argument for nullum tempus, that governmental actors are sometimes too busy looking after the welfare of the state to bring suit in time, is only a legitimate excuse when the time limitation is contingent on knowing delay by the plaintiff. This policy argument is sound when applied to immunity from statutes of limitation and laches because those doctrines require that delay before they serve to protect defendants. However, where statutes of limitation under the discovery rule and laches will only protect the defendant's interests when there is delay by the plaintiff after gaining knowledge of the injury, statutes of repose can bar a claim even before the victim knows they have been injured. Since statutes of repose offer no exceptions for good excuses, the justifications for the government's delay are irrelevant.

"The second policy justification for nullum tempus, to preserve the public assets from the negligence of public officials, is also much less persuasive in the context of statutes of repose. The legislature's decision to absolutely limit the timeframe in which certain types of defendants may be sued is motivated by fear of the

economic impact of timeless liability on their beneficial services. The legislature has determined that the economic stability of the classes of defendants protected by statutes of repose outweighs the state's interest in providing a remedy. An argument that governmental bodies should be immune to the balance struck by the legislature in order to preserve public assets cannot be successful because the legislature has already determined that it is ultimately better for the general public to limit the liability. Again, this is distinguished from statutes of limitations and laches on the grounds that those doctrines provide far less stability for defendants because of the requirement of knowing delay. Indeed, it is the exact purpose of statutes of repose to protect defendants from the elastic nature of statutes of limitations and laches because of the doctrines' focus on the plaintiffs.

"Not only are the policy considerations behind nullum tempus severely undermined by the purposes behind statutes of repose, but the very fact that the legislature has enacted such statutes is indicative of the exact type of change in circumstances that should compel a court to discard a common law doctrine. The legislative action to protect a group at the risk of depriving completely blameless plaintiffs of their causes of action makes it clear that any interference with that protection is no longer reflective of economic and social needs of society." (Internal quotation marks omitted.) J. Mack, supra, 73 Def. Couns. J. 194–95; *Shannon* v. *Wilson*, 329 Ark. 143, 151, 947 S.W.2d 349 (1997).

"The state legislature . . . possesses the authority to abrogate any governmental immunity by statute that the common law gives to the state and municipalities." *White* v. *Burns*, 213 Conn. 307, 312, 567 A.2d 1195 (1990). Excepting the state from adherence to statutes of repose as set forth in §§ 52-577, 52-577a, 52-584 and 52-584a would be an exception that could not have been

intended by the legislature in its aim to alleviate the difficulties and implications of litigating stale claims. The purpose of the status of repose was to allow defendants at some point to become free from liability, absent some unclean or fraudulent conduct. The logical conclusion is that the legislature intended the state to abide by the statutes of repose.

Therefore the motions for summary judgment as to counts one, two, three and thirty-five are granted. The motions to strike counts four, ten, eleven, twelve, fourteen, fifteen, sixteen, eighteen, nineteen, twenty, twenty-two, twenty-three, twenty-four, twenty-eight, thirty, thirty-one, thirty-three, thirty-four, thirty-seven, thirty-eight, thirty-nine and forty are granted. The motions to strike the special defenses as to counts twenty-one, thirty-two and thirty-six are denied.

V

NULLUM TEMPUS—ORDINARY AND NONORDI-
NARY STATUTES OF LIMITATIONS—GENERAL
STATUTES § 52-576; MOTION TO STRIKE AS TO
COUNTS 13, 17, 25 AND 26

The final issues to be resolved are the counts alleging breach of contract directed to Lombardo (count thirteen of the second amended complaint) and F.B. Mattson (count seventeen of the second amended complaint), and the counts related to the performance bond as to Peerless (count twenty-five of the second amended complaint) and American Casualty (count twenty-six of the second amended complaint) (contract defendants). The Peerless performance bond is conditioned on Lombardo's contract, and the American Casualty performance bond is conditioned on F.B. Mattson's contract. The issue, therefore, is how the doctrine of nullum tempus relates to the contract claims of F.B. Mattson and Lombardo because there is no statute of repose with respect to "Actions for account or on simple

or implied contracts." General Statutes § 52-576; see part IV. There also is no evidence presented to the court that there was a specific repose period contained in either the Lombardo or F.B. Mattson contract. See part III. The issue, simply stated, is whether the state is entitled to employ the doctrine of nullum tempus as a shield from the application of the six year statute of limitations contained in § 52-576.

General Statutes § 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ." "'[I]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted.' . . . *Tolbert* v. *Connecticut General Life Ins. Co.*, 257 Conn. 118, 124, 778 A.2d 1 (2001)." *Lenares* v. *Miano*, 74 Conn. App. 324, 330–31, 811 A.2d 738 (2002).

In the present case, the breach of contract would have occurred during the course of construction. There is no dispute that the construction was completed in 1996 and that the state took possession of the law library on January 31, 1996. This action was not brought until February, 2008, six years beyond the six year statute of limitation period set out in § 52-576. A long established common-law principle in Connecticut holds that ordinary statutes of limitation do not apply to government claims. See generally *State* v. *Goldfarb*, supra, 160 Conn. 326 (state is "not impliedly bound by the ordinary statute of limitations"). Although the nullum tempus doctrine was well entrenched in English common law and has found a place in American jurisprudence, no reported Connecticut case has ever used this phrase, and it is not a part of the Connecticut common law. Instead, Connecticut common law adheres to a limited principle of sovereign immunity regarding statutes as

follows: "The State holds the immunities . . . belonging by the English common law to the king. It is not to be sued without its consent. Its rights are not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed, by the use of express terms or by force of a necessary implication." *State* v. *Kilburn*, 81 Conn. 9, 11, 69 A. 1028 (1908), citing *State* v. *Hartford*, 50 Conn. 89, 90, (1882). This Connecticut common-law doctrine applies generally to all statutes, not just to statutes limiting time, and is derived from English common law. One of the first pronouncements of the doctrine was in *State* v. *Hartford*, supra, 89, in which the court explained: "Kent says:—'It is a general rule in the interpretation of statutes limiting rights and interests, not to construe them to embrace the sovereign power or government, unless the same be expressly named therein or intended by necessary implication.'" Id., 91, quoting 1 J. Kent, Commentaries on American Law, 460. To date, no appellate court in Connecticut has had occasion to determine the precise question of whether § 52-576 operates against the state.

The application of § 52-576 to the state may be viewed from an analysis of the policy reasons supporting such statutes. "General statutes of limitations are the most common time limitation on a tort plaintiff's rights to bring suit. These statutes set a prescribed time in which a plaintiff must file a complaint after a cause of action accrues. If a plaintiff does not file a complaint within the time period, the complaint is dismissed and the cause lost, regardless of the underlying merit of the suit." J. Mack, supra, 73 Def. Couns. J. 181; see *Kavanagh* v. *Noble*, 332 U.S. 535, 539, 68 S. Ct. 235, 92 L. Ed. 150 (1947); *Chase Securities Corp.* v. *Donaldson*, 325 U.S. 304, 314, 65 S. Ct. 1137, 89 L. Ed. 1628 (1945).

"There are three policy reasons supporting statutes of limitations. The first reason is to protect defendants from stale claims." J. Mack, supra, 73 Def. Couns. J. 181; see *Order of Railroad Telegraphers* v. *Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S. Ct. 582, 88 L. Ed. 788 (1944). "Statutes of limitations are said to allow defendants security in their business and planning by allowing them to rest assured after a certain period that they cannot have liability for acts committed far in the past. Furthermore, statutes of limitations serve to protect defendants by insuring that they will not be disadvantaged by the effect of time on their ability to defend themselves." J. Mack, supra, 181; see *Order of Railroad Telegraphers* v. *Railway Express Agency, Inc.*, supra, 349. "Defendants will not be able to produce evidence to absolve themselves if 'memories have faded, witnesses have died or disappeared, and evidence has been lost.' " J. Mack, supra, 181, quoting *Chase Securities Corp.* v. *Donaldson*, supra, 325 U.S. 314.

"The second policy consideration is to protect the courts from having to hear stale claims when their time could be better spent on more recent, and thus more important, disputes. Thus, court dockets are cleared of these older claims, increasing judicial efficiency and preventing wastes of time. There is an underlying assumption that these claims will be 'groundless or inconsequential' due to the passage of time, because matters of fact are more difficult to prove if they are too remote in time.

"The third policy justification for statutes of limitation is to punish plaintiffs who 'sleep on their rights' for an inexcusably long time." J. Mack, supra, 73 Def. Couns. J. 181–82; *Tom Olesker's Exciting World of Fashion, Inc.* v. *Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 132–33, 334 N.E.2d 160 (1975). "As courts have observed, '[t]he primary purpose of limitation periods

is to require the prosecution of a right of action within a reasonable time to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims.' " J. Mack, supra, 182, quoting *Tom Olesker's Exciting World of Fashion, Inc.* v. *Dun & Bradstreet, Inc.*, supra, 132. "Thus, the [plaintiffs who delay] a suit beyond a certain period [bring] the punishment upon themselves and [deserve] to be penalized for allowing their claim[s] to go stale. A plaintiff's knowing delay in filing suit increases the chances that justice will be frustrated by the loss of evidence and cripples the defendant with fear of perpetual liability. As a result, a plaintiff must have some incentive to file suit in a timely fashion.

"All three of these policies may be served in most tort suits, where the defendant's wrongful actions and the plaintiff's discovery of [its] injury are concurrent. However, some of the policies have been undermined by recent developments in the law of limitations when the discovery of the damage and the defendant's wrongdoing do not occur at the same time.

"Originally, statutes of limitations were interpreted to begin running at the time of the defendant's bad act." J. Mack, supra, 73 Def. Couns. J. 182; see, e.g., *Thornton* v. *Roosevelt Hospital*, 47 N.Y.2d 780, 781, 391 N.E.2d 1002, 417 N.Y.S.2d 920 (1979) (holding that cause accrued on date defendant injected substance into plaintiff's body, not when cancer caused by injection manifested itself twenty years later). "However, in the past thirty years there has been an increase in the use of the 'discovery of damage' rule." J. Mack, supra, 182; see, e.g., *Schiele* v. *Hobart Corp.*, 284 Or. 483, 587 P.2d 1010 (1978) (product liability action for meat packer who contracted pulmonary pneumonia from machine); *Ayers* v. *Morgan*, 397 Pa. 282, 154 A.2d 788 (1959) (when physician left sponge inside patient during course of operation, statute of limitations did not begin to run

until nine years later when malpractice discovered by X ray); see generally note, supra, 96 Harv. L. Rev. 1683 (discussing need for discovery of damage rules and rejection of statutes of repose). "This doctrine places the time of accrual as when a reasonable person would have discovered the injury." J. Mack, supra, 182; see, e.g., *Carter* v. *Brown & Williamson Tobacco Corp.*, 778 So. 2d 932 (Fla. 2000) (focusing on whether plaintiff should have reasonably discovered injuries within three year statute of limitation even though injuries were due to smoking that started forty-four years before lawsuit and ended twenty-nine years before lawsuit), cert. denied, 533 U.S. 950, 121 S. Ct. 2593, 150 L. Ed. 2d 751 (2001); cf. *Corp. of Mercer University* v. *National Gypsum Co.*, 258 Ga. 365, 368 S.E.2d 732 (1988) (refusing to extend discovery rule to actions involving purely property damage). "States have almost uniformly adopted this rule for personal injury mass toxic suits." J. Mack, supra, 182; see, e.g., *Braune* v. *Abbott Laboratories*, 895 F. Sup. 530, 549–50 (E.D.N.Y. 1995).

"The adoption of the discovery rule reflects a recognition of the harsh effect of a statute of limitations on a plaintiff who never even knew she had a cause of action until too late. Courts and legislatures responded to the challenges of latent injuries by refusing to allow statutes of limitations to begin running until the injury should have reasonably been discovered. This reaction demonstrates that the policies behind the statute of limitations that protect the defendant and the courts from stale claims are not nearly as important as protecting the plaintiff's right to redress [its] injuries. It is only when the plaintiff knowingly delays a suit after discovery of the injury that statutes of limitations bar the claim.

"The modern focus of statutes of limitations has shifted to the plaintiff's accountability. Although defendants will still be disadvantaged by delay, and courts will still adjudicate claims involving incidents that

occurred decades ago, these policies are only protected if the plaintiff knew or had reason to know of the injury during the delay." J. Mack, supra, 73 Def. Couns. J. 182; see, e.g., K. Ferguson, "Repose or Not? Informal Objections to Claims of Exemptions After *Taylor* v. *Freeland*," 50 Okla. L. Rev. 45, 73 (1997). "Thus, protection of the first two policy justifications for statutes of limitations is conditional on satisfaction of the third." J. Mack, supra, 182–83.

As stated previously, it is undisputed that the state took occupancy of the law library on January 31, 1996, and that mere months after taking occupancy of the law library, became aware of the water intrusion that is the subject of this litigation. Yet the state chose not to initiate this action until some twelve years later. This length of time is unduly burdensome and unexplained.

Citing *State* v. *Goldfarb*, supra, 160 Conn. 323, the state argues throughout its brief that it is for the legislature, not the court, to waive the state's sovereign immunity. The court in *Goldfarb*, however, "recognized the principle that a subdivision of the state, acting within its delegated governmental capacity, is not impliedly bound by the *ordinary* statute of limitations." (Emphasis added.) Id., 326; see also *New Haven* v. *Torrington*, 132 Conn. 194, 204, 43 A.2d 455 (1945), overruled on other grounds by *Anderson* v. *Bridgeport*, 134 Conn. 260, 269, 56 A.2d 650 (1947); *Bridgeport* v. *Schwarz Bros. Co.*, 131 Conn. 50, 54, 37 A.2d 693 (1944).

Ordinary is defined in Black's Law Dictionary (4th Ed. 1951) as "regular; usual; normal; common; reasonable." In this case, the state is attempting to extend the principle of nullum tempus far past the "ordinary" or usual statute of limitations. In fact, here, the "ordinary" statute of limitations expired in 2002, six years after the construction was completed.

To allow the state to bring a suit so far past the "ordinary" statute of limitations is not routine or usual.

If the court adopts the state's argument that in the event there is no statute of limitations that specifically includes the state, the doctrine of nullum tempus allows the state to bring a claim for breach of contract after the statute of limitations has expired, and the question becomes when, if ever, will the state be prohibited from bringing a claim against a contractor for construction work on a state building? Will the state be able to bring a claim twenty-five years after the building was completed? Fifty years? One hundred years? When asked at oral argument, the state's position was that the claim could be brought at any time. This slippery slope is, to this court, a major public policy concern. In the construction field, buildings do not last forever. If the state is not bound by any statutes of limitations, it will have an unlimited time period to commence lawsuits against contractors and subcontractors.

Therefore, the court concludes that under the circumstances of this action, the contract claims by the state are barred by the statute of limitations set out in § 52-576. Therefore, the motions to strike counts thirteen, seventeen, twenty-five and twenty-six are granted.